## Ezekiel H. Palmer

### v.

## Thomas Gardiner et al.

77 143
30a 124

77 143
157 381

77 143
77a 159.

77 143
185 127
185 128
86a 182

77 143
186 ³91

1. Promissory note—*possession by payee evidence of ownership, though indorsed in blank.* The possession of a promissory note by the payee is *prima facie* evidence of his ownership, and the fact that such note is indorsed in blank by the payee, and also by another person, does not contradict, or even tend to contradict, this presumption.

2. Where the payee takes up a promissory note after its negotiation by him, the ownership, both legal and equitable, will return to him, and he may maintain an action thereon in his own name. He may, in such case, strike out the indorsements, or, if in blank, fill them up to himself.

3. Abatement—*whether defense is in abatement or in bar.* Where a suit is prematurely brought upon a promissory note, as, before the expiration of the days of grace, this defense is one in abatement of the particular action only, and not one in bar, or to the merits. It is not good when sought to bar the action.

4. Appeal to Supreme Court—*right, how lost.* It is the duty of a party, who has perfected an appeal to this court, to file a transcript of the record in the case by the close of the second day of the next term thereof, or, within that time, procure an order extending the time. On failure to do so, he will lose all right to further prosecute his appeal, and his appeal may be dismissed, with damages.

5. Same—*practice, where record is lost.* Where, after an appeal to this court is perfected, the record below is lost, the appellant should, on proper notice, supply the same under an order of the court below at its next term; and if, from any reason, such application is not then allowed, he should procure a continuance, to enable him to supply the lost record.

6. Same—*practice, where the appellee dies without entering his appearance.* Where the appellee dies after an appeal is perfected, and before the filing of the record in this court, the law does not require his executor or administrator to enter an appearance, but it is the duty of the appellant to get him into court by the service of a writ or notice. He may suggest the death, and revive the suit in the name of the representative, and then bring him into court.

7. The appellant, in all respects, occupies the position of a plaintiff in error, and is required to take the same steps to revive the suit upon the death of the appellee. If he does not, his appeal will abate, and an order dismissing his appeal will operate as an abatement, and leave the judgment appealed from in full force.

8. PRACTICE IN SUPREME COURT—*costs and damages on abatement of appeal.* Where an appeal is dismissed or abated by the death of the appellee, a judgment against the appellant for his own costs, is proper, but it is not proper to render judgment against him for the appellee's costs, nor for damages, and if so rendered, it will be corrected on proper application at the same or next succeeding term.

9. CHANCERY JURISDICTION—*remedy at law.* A court of equity will not interfere to grant relief against a judgment at law for grounds that are available at law, as, for an error of fact, which may be heard and corrected on motion made in apt time.

10. SAME—*relief against judgment.* A defendant in a judgment at law, who was only surety, sought by bill to enjoin its collection, on the ground that the plaintiff, who had died, had devised a part of his estate to the principal debtor, in trust for his children, and to have such estate so devised applied in payment of the judgment, on the ground of fraud and collusion on the part of the testator and the principal debtor, to enable the latter to collect the judgment, but the bill failed to show that the debts of the testator were paid, or that the judgment, when collected, would not be required for their payment: *Held,* that the bill showed no ground for the relief sought.

11. A court of equity can not interfere to prevent a man from bequeathing his own money to a father, in trust for his children, even if the money, or a part of it, has to be collected from a surety of the father on a note to the testator; nor can a will, made in another State, be contested by the surety on the ground that the devise was fraudulent, in a collateral proceeding to enjoin the collection of a debt due by the surety to the testator, especially when all the parties interested in the will are not parties to the proceeding.

12. SAME—*relief against excessive levy.* A court of equity has no jurisdiction to grant relief from a levy of an execution upon real estate on the ground that it is excessive. If such a levy could be excessive, the remedy is by motion to quash the same. But as only so much land can be sold, if a division can be made of entire tracts, as will pay the execution and costs, the court fails to see that any injury can result from an excessive levy on real estate.

13. CHANCERY PRACTICE—*preserving evidence.* Where damages are assessed upon the dissolution of an injunction, and the evidence upon which the award is made is not preserved in the record, the decree, so far as the damages are concerned, will be reversed.

APPEAL from the Circuit Court of DeWitt county; the Hon. LYMAN LACEY, Judge, presiding.

This was a bill in chancery, by Ezekiel H. Palmer against Thomas Gardiner, sheriff, James M. Gunn, executor of the last will of A. Mitchell, deceased, Isaac N. Mitchell, and Augustus P. Mitchell. The opinion of the court states the facts of the case.

Mr. E. H. Palmer, *pro se.*

Messrs. Moore & Warner, for the appellees.

Mr. Chief Justice Walker delivered the opinion of the Court:

Appellant filed his bill to enjoin the collection of two judgments, one in the DeWitt circuit court, and the other in this court. The bill alleges that appellant signed a note for $1000, as surety for I. N. Mitchell, to A. Mitchell; that the note was for borrowed money, the interest payable annually, the first two instalments of which were paid by I. N. Mitchell, the principal debtor in the note. The payee brought suit against appellant; the principal in the note, and the payee resided at the time in Ohio; that the note had been indorsed in blank by the payee, and also by the cashier of a bank in Ohio; that the note was only due one day, by its terms, when suit was brought, and days of grace were not allowed; that on the trial the note was read in evidence, against the objection of defendant. Judgment was recovered, and an appeal was prayed to this court and perfected in April, 1872.

On the 4th of January, 1874, the plaintiff in the judgment died testate, and on the 15th of that month a transcript of the judgment and appeal bond was filed in this court, and, on motion of the attorneys for plaintiff below, the appeal was dismissed and a judgment rendered in favor of plaintiff below for $55, as damages.

The bill also alleges that the plaintiff in the judgment made his will, by which he gave to the principal debtor in the note one-eighth part of his estate, in trust for his children,

10—77th Ill.

and in case he should cease to have children alive, then to take the real estate in fee to himself.

On these judgments executions were issued and levied on 1200 acres of land, which is claimed to be excessive.

On filing the bill, a temporary injunction was granted, but answers were filed to the whole bill by Gardiner, and to part, by Gunn, denying that appellant was surety, but was principal in the note, and he demurred to the remainder of the bill. No replications were filed, and on a hearing on bill, answers and demurrer, the injunction was dissolved and the bill dismissed. From that decree this appeal is prosecuted.

That the circuit court had jurisdiction of the parties and the subject matter, there is no doubt, nor is it questioned; nor is it apparent, from the allegations of the bill, that there was even error in the record. It has been frequently determined that the possession of a note is *prima facie* evidence of ownership by the holder. In this case, the payee seems to have been the holder when suit was brought, nor do the indorsements contradict, or even tend to contradict, the presumption. The indorsements were in blank, and not, nor had they been, filled up at the trial. It is but a reasonable presumption that the note had been negotiated, but afterwards taken up by the payee. If so, the ownership, legal and equitable, returned to him, and he could maintain an action in his own name.

Suppose the payee had filled up the indorsement to the cashier, and he had filled up his to the payee, would any one have doubted that the payee took the legal title? And having taken up the note thus indorsed, the same result was produced; and had he stricken out the indorsements, the same end would have been attained. We fail to perceive any error in maintaining the action in the name of the payee.

As to the question of days of grace, the bill is loose and defective. It merely states conclusions. It should have given the date on which the note was, in terms, payable, together with the date of the commencement of the suit, that it might

be determined whether the suit was prematurely brought. The bill only states that it was. But even if the facts were well stated, it is manifest that the ground of defense was in abatement, and not in bar. The defense does not go to the merits, but simply to the right to sue at that time. If such a defense were allowed in bar, then no future recovery could be had on the note, but if allowed in abatement, when the note matured an action could be maintained and a recovery had, unless defeated on the merits. A defense in bar always goes to the merits, and a plea in abatement only to the right to maintain that action. This defense was sought to bar the action, and hence could not be allowed, and we do not perceive, from the allegations in the bill. that there was error in the judgment sought to be enjoined.

The judgment, then, was valid and binding, but was stayed by the appeal, and it was the duty of appellant to file a transcript of the record in the case by the close of the second day of the term, or, within that time, to procure an order of the court extending the time. On failure to do so, appellant lost all right to further prosecute his appeal, and, under the long settled practice, the appeal could be dismissed, with damages, for want of prosecution. When appellant, therefore. failed to file his transcript previous to the third day of the next term of this court, in the division in which the appeal was taken, he lost all right to further prosecute his appeal, nor could the court grant him such right.

Has appellant shown such an excuse for failing to file his transcript as entitles him to relief in equity ? He alleges, as an excuse, that the papers were lost or mislaid, so that he could not procure a transcript of the record, but he fails to state that he had made any effort to supply the loss in the circuit court, or had taken any steps for the purpose. He could, on proper notice to the other party or his attorney, have supplied the lost record under an order of the circuit court at its next term ; or if, from any reason, his application to do so had not been allowed, he could, on a proper showing, have

obtained a continuance, that he might supply the lost record. But he failed to do either, or take any steps in that direction. Again, he knew he had taken an appeal, and that he thereby brought himself and appellee into this court, and that he should have followed and prosecuted his appeal. On the contrary, he gave the matter no attention whatever. When appellant perfected his appeal he thereby became the actor, and virtually, and for every purpose, and in all but name, a plaintiff. He, by assigning errors, does what is, by analogy, regarded as filing a declaration, and the joinder is regarded as a demurrer to the declaration, and to prosecute his appeal with effect, he must have a defendant in court. There is no other means of doing so, under our practice.

It is not the duty of a defendant in error to enter his appearance, and in case of his death, the law does not require his executors or administrators to enter their appearance, but it is the duty of plaintiff in error to get them into court by service of writ or notice. He may suggest the death, and revive the suit in the name of the representative, and thus bring him into court. The appellant, in all respects, occupies the position of a plaintiff in error, and is required to take the same steps to revive a suit and prevent its abating, by the death of appellee. The representative of appellee or defendant in error may, if he choose, suggest the death and revive the suit in his own name, or appellant or plaintiff in error, failing to do so, may have the appeal or writ of error abated.

If appellant desired to avoid the abatement of his appeal, he should have suggested the death of appellee, and had the appeal revived in the name of the executor then or thereafter to be appointed. This he wholly failed to do, and having failed, the order dismissing the appeal operated as an abatement of the appeal and revived and restored the judgment of the court below to its full vigor, and there was no irregularity in suing out execution on it.

As to the judgment in this court, the dismissal being treated as an abatement of the appeal, the judgment for costs of appellant, against him, was regular, but not for appellee's costs, and the judgment for damages was, no doubt, unwarranted, but appellant should have applied to this court for relief.

Had a proper application been made to this court, or a judge thereof in vacation, on a proper showing, an order would have been made staying further proceedings until an application could have been made to the court to correct the judgment.

But even if it were conceded that it was error to dismiss the appeal under the circumstances, it was an error in fact that could only be corrected in this court. The error, if one existed, consisted in the fact that appellee was dead when the court met, and was unknown to counsel appearing in the case, and to the court. On a proper application and proof, made in apt time, the order dismissing the appeal might have been set aside on terms, and the judgment for damages would have been corrected; but no such application was made. The remedy, if there be one, was complete at law, and equity will not interfere.

It is likewise urged, that the will of the plaintiff in the suit sought to be enjoined, by a fair construction, gives the fee of the devised premises to I. N. Mitchell, who is alleged to be the principal in the note, and that the property should be decreed subject to the payment of the judgment.

We fail to perceive how it is possible to hold that I. N. Mitchell took the estate in his own right. Our law has always permitted property to be conveyed or devised to a trustee for the use of another, and, in the same deed or will, to provide for a remainder over. This has always been a common mode of assurance, and which we have never known questioned. But it is charged that the will was collusively and fraudulently made, to enable I. N. Mitchell and another brother, who is indebted to appellant, to hold this property

in pretended trust, but in fact by them as their own, to enable I. N. Mitchell to avoid the payment of this note, as he is liable to as the principal maker, and the other sons in the same manner and on the same trusts, for the purpose of enabling them to avoid the payment of indebtedness to appellant. A complete answer to this is, that it is nowhere averred that the debts of the testator's estate are paid, or that this note or its proceeds will not, when collected, be required for their payment. But even if it should not be, still we fail to see how equity can interfere to prevent a man from bequeathing his own money to a father, in trust for his children, even if the money, or a part of it, has to be collected from a surety of the father on a note to testator. Nor can a will be contested in this collateral proceeding, out of the State where it has been probated, and beyond the jurisdiction of the estate devised and bequeathed by it, especially so when all of the parties interested in the provisions of the will are not parties to the proceeding.

Nor does the allegation that the levy on real estate is excessive, give a court of equity jurisdiction. If there could be an excessive levy on land under execution, which we are unable to see could be the case, the remedy would be by an application to the court issuing the execution. to quash the levy. But where the judgment is a lien on the lands, and only so much can be sold, if division can be made of entire tracts, as will pay the execution and costs, we fail to see that any damage can result, but if it should, the sheriff would be liable for the injury.

But the record fails to show that the chancellor heard any evidence, and none is preserved in the record, on the suggestions for damages. The court says, that appellees filed suggestions, and on hearing the same, and on agreement of counsel, he found they had sustained damages to the sum of $25. The evidence, as this court has repeatedly held, must be preserved in the record on this assessment, and this should have been done.

For this error, the decree for damages will be reversed, but inasmuch as we perceive no other error, the decree will be, in all other things, affirmed, at the costs of appellant.

*Decree modified.*