C. P. COOPER, EXECUTOR OF JOHN ROBERTS, DECEASED, APPELLANT, vs. C. O. LIVINGSTON, APPELLEE.

1. When the damages laid in the declaration are greater than are claimed in the præcipe and writ, the remedy of the defendant is to move to set aside the declaration for irregularity before pleading in bar. The plea is a waiver.

2. If the damages assessed are greater than the amount claimed in the declaration, the plaintiff may remit the excess or amend the declaration in that respect *before* judgment. Judgment for the excessive amount is erroneous, and will be reversed.

3. Costs cannot be recovered against an executor or administrator when the suit is brought within six months after the issuing of letters.

4. In a suit against the executor of a will upon a note made by decedent and endorsed to plaintiff before due, defendant having pleaded a want of consideration, it is shown that plaintiff admitted that the note was given for an invalid consideration, and that he knew it at the time he traded for it, and plaintiff does not expressly deny making these admissions, he cannot recover upon the note without showing a valid consideration as between the maker and the payee, though the plaintiff paid a valuable consideration for the note.

5. "Conjuring" a sick man to cure him of his illness is not a valid consideration for a promissory note.

6. In a suit against an executor upon a note of the decedent, a judgment that "the plaintiff have and recover from the defendant," is not a proper judgment. The judgment should be that plaintiff recover against the defendant as executor of the last will, &c., of the testator to be made out of the goods, etc., of the estate of the deceased, and that he have execution thereof, and not against the defendant generally.

Appeal from the Circuit Court for Duval county.

Trial and judgment by Mr. T. A. McDonell, Attorney at Law, as Referee.

The facts of the case are stated in the opinion.

*C. P. & J. C. Cooper* for Appellant. ·

*M. C. Jordan* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court:

Livingston, plaintiff below, sued on a promissory note made by John Roberts to Mrs. E. G. McGruder, December 29th, 1876, for $250. Defendant pleaded " on equitable grounds " that the note was given without consideration; that the payee extorted the note from Roberts in his last sickness, while weak in mind and body, upon her promise to cure him by conjuring and incantations. Roberts died a few weeks after giving the note. Defendant further avers that plaintiff was not an innocent purchaser for a valuable consideration, but bought the note with full knowledge of the origin of the note and the illegality of the consideration. The plea was sworn to and plaintiff took issue thereon.

A trial was had before a referee, who found for the defendant, and on appeal the judgment was reversed. Upon a second trial the referee found for the plaintiff, and the defendant now appeals.

The præcipe for the original process laid the damages at $400. The declaration claimed $500 damages. The finding and judgment of the referee were for $575.33.

A motion in arrest of judgment was made upon the ground of variance between the præcipe and declaration.

This is not a proper ground of a motion in arrest of judgment. McKay vs. Freibele, 8 Fla., 21. If the damages claimed in the declaration were greater than those claimed in the præcipe and summons, the proper remedy was by motion to set it aside for irregularity before pleading. 1 Ch. Pl., 269, 16 Am. Ed. What is proper matter for a motion in arrest of judgment is sufficiently stated in Sedgwick vs. Dawkins, 18 Fla., 335.

In the present case the defendant pleaded to the declaration, and thereby waived the technical variance. Robinson vs. Hartridge, 13 Fla., 501, 508. If the damages found were greater than the amount claimed in the declaration, the remedy is by a *remittitur* of the excess of the damages, or by amending the declaration in the prayer for damages before judgment. 1 Chitty's Pl., 16 Am. Ed., 349. Such amendment is within the purview of Section 74, Chapter 1096, Acts of 1861. If the amendment is not made and judgment is entered for a larger amount than is claimed in the declaration, it is error and the judgment must be reversed. Harris vs. Jaffray, 3 Har. & J., 543 ; Hoit vs. Molony, 2 N. H. 322.

" Where the court has jurisdiction of the cause relief is granted against difficulties of this kind in two ways. One is to permit the plaintiff to enter a *remittitur* for all the damages found over the sum demanded, and to take judgment for only the residue." 17 Johns., 111 ; 4 M. & S., 93 ; 2 Bl. Rep., 1300. " Another is to set aside the verdict and then, before a new trial, grant an amendment." Tidd, 653 ; 2 N. H., 323

It is too late to allow such an amendment after a writ of error by the Appellate Court. Hutchinson vs. Crossin, 10 Mass., 251.

Error is assigned on the ground that costs were given against the defendant, who is an executor, the suit having been brought within six months after the issuing of letters testamentary. The statute expressly says that the plaintiff, though he obtain judgment for the amount of his claim, " shall not recover any costs in his suit " if he bring his action against an executor or administrator within six months after taking out letters. McClellan's Dig., 84, §28, Act of November 20, 1828, §26.

There are no exceptions made in the statute. The object

of the suit is to establish the demand if it is disputed, but as the executor cannot be compelled to pay any demand within six months, he cannot be mulcted in costs if sued within that time. This judgment for costs is therefore erroneous.

The second plea is called by the pleader on the part of the defendant a "plea on equitable grounds." While this plea is not properly a plea on equitable grounds within the meaning of the statute, yet it denies a valid consideration for the giving of the note, alleges that plaintiff knew of the illegality of the consideration, and that plaintiff bought it with such knowledge for an inadequate consideration. The plaintiff having treated it as a proper plea of a legal defence by taking issue upon it, we will so consider it.

The referee in his finding says that the testimony is substantially the same as that given upon the first trial. See 18 Fla., 70, where the testimony on the first trial is substantially compiled and considered.

A comparison of the testimony given upon both trials shows a very substantial difference in several respects. We state briefly the testimony given upon the last trial.

The note was introduced by the plaintiff, and there he rested his case. The defendant, instead of insisting that plaintiff must make further proof as to the consideration of the note and of its endorsement by the payee to the plaintiff, proceeded to introduce testimony to prove his defence.

W. M. Ledwith testified that he was present when plaintiff brought the note to Mr. Cooper as executor of the will of Roberts and demanded payment soon after the death of Roberts. Mr. Cooper endeavored to ascertain the nature of the claim. It transpired that the money asked for was for services rendered to Mr. Roberts by a professed fortune-

teller. Mr. Livingston stated that Mrs. Magruder had been conjuring Mr. Roberts, and that was the nature of the claim. Mr. Cooper then asked Mr. Livingston certain questions as to the nature of the claim. Mr. Livingston stated that he had traded for the note with Mrs. Magruder, and had given her for it some cow feed and a stove, and that it was some small compensation or amount, and that the note was given to Mrs. Magruder for doctoring by conjuring Mr. Roberts. Either Mr. Cooper or myself asked him if he knew what kind of services they were at the time of this trade that Mrs. Magruder had performed. Livingston said he did, and that they were for conjuring, as he had stated in his previous testimony. Livingston said that Mrs. Magruder was a fortune-teller. He said he did not give much for the note—cow feed and a stove. Witness stated as a reason why his testimony is more positive than on the former trial, that the details of that conversation were recalled by Mr. Cooper refreshing his memory with other facts of the conversation.

Louisa Roberts, widow of John Roberts, testified : I was with Mr. Roberts all the time during his last illness. Doctors Wakefield, Stout and Daniels attended him during his sickness. Mrs. Magruder did not attend as a doctor, but came out of her own accord, and said she could cure him. Mrs. Magruder came out there on a visit two or three times, and staid I suppose a half an hour each time. Once she gave him a dose of spirits of turpentine and oil, which I furnished; this is all she did. She never helped to nurse or do anything else for him. She did not cure him, and he died a short time after. Mr. Roberts died the 16th February, 1877. Those visits were made about a week before his death. He had been confined to his bed so that he could not get out of his house. Previous to Christmas, 1876, we were living in Clay county, and he had been a confirmed

invalid, and as such was brought in a carriage to the place where he died. I am positive that from the 29th December, 1876, Mrs. Magruder did not commence to render services to my husband and continue to do so until a short time before his death. I was there all the time and know. I am positive that on that day Mrs. Magruder did not have a business interview with my husband. Mr. Roberts did not leave his house that day.

C. P. Cooper testified: A short time after I entered upon my duties as executor of the estate of John Roberts, C. O. Livingston came to my office in Jacksonville and presented the note in controversy for payment. I took the note and examined it, and asked him what the consideration was for which the note was given; he answered that it was a note given by Mr. Roberts during his last illness for conjuring him to make him well. I asked him who Mrs. Magruder was; he said she was an old woman who had lived in La-Villa, and lived by conjuring and fortune telling, that she professed to be a kind of doctor and treated in that way; that she was not a regular doctor. Mr. Ledwith was present and at times joined in the conversation. I handed the note back to him, and refused to pay it. During the conversation I asked him what he had given for the note. He laughed and said he did not give much, or something of that sort, that he had given a little food for Mrs. Magruder's horse or cow and a stove. He mentioned no other consideration. I then remarked the fact of the suspiciousness of his giving so little for the note, and he said he had given so little because he had his doubts about the note and taken the chances of its being paid, or words to that effect. I received the whole of my information from Mr. Livingston in relation to the note, its character, the circumstances under which he obtained it and all about it as related in my testimony. He admitted to me then and there that he knew

at the time he traded for the note how Mrs. Magruder had gotten it, and what she had given for it as the consideration as testified to.

Frederick Luders testified on the part of plaintiff that Mrs. Magruder attended Mr. Roberts several weeks, made medicine herself and brought it. One day she did not come and Roberts sent for her. She sometimes stayed with him one to two hours and sometimes three. I was there nights and sat up with him. She gave him medicines, and at times she would be alone with him in the room. Roberts would request everybody to go out but Mrs. Magruder. He would say that Mrs. Magruder wanted to be by herself with him. Never saw her practice conjuring. I was with him a good deal, for the last four or five days all the time. Don't think he was easily imposed on or had a weak mind in his last illness, and he talked sound sense. Mrs. M. attended him about three weeks, calling generally every other day, and remaining one to three hours. Mr. Roberts said the doctors never did him any good. I tried to get him to stop taking her medicine. He said he thought she had done him some good.

F. F. L'Engle testified on the part of the defendant that Mr. Roberts was of a weak mind during his last illness.

The plaintiff on his own behalf testified that he sold a bill of goods to Mrs. Magruder, including a buggy, harness, a lot of furniture, hay, corn, &c., to the amount of $282.05, and took this note in part payment. Mrs. Magruder came to buy some furniture and household goods in my line, and wanted to know if I would take John Robert's note for them. I told her I did not know who he was. She referred me to parties, of whom I inquired, and became satisfied that he was a responsible party and sold her the goods, and took the note in part payment. When I presented the note to Mr. Cooper for payment he said it was good for

nothing; he said it was gotten by conjuring. I shall always remember the word, for I had never heard the word before. Mr. Cooper asked me who this Mrs. Magruder was. I said I heard she was a fortune-teller and a doctor, that was all I knew about her. I then left the office and immediately commenced suit. I did not tell Mr. Cooper in presence of Ledwith that Mrs. Magruder was an old woman who lived in LaVilla, and lived by conjuring and fortune-telling, and that she professed to be a kind of a doctor.

*Question*—Did you tell Mr. Cooper that for the note of John Roberts you had given a little food for Mrs. Magruder's horse and cow ?

*Answer*—I told him I had given her grain, hay, a new harness, a pair of boots, furniture and money. Mr. Cooper did not ask me why I had given so little for the note. I did not say I gave so little for the note because I had doubts about the note and had taken chances, nor words to that effect.

The foregoing is all the material testimony bearing upon the issues. By a comparison of this testimony with that given upon the former trial by Mr. Cooper, Mr. Ledwith and the plaintiff, it will be seen that while the testimony of Ledwith and Cooper is more distinct and positive, that at the conversation between them at the time the note was presented for payment Mr. Livingston expressly said that the note was given by Mr. Roberts in his last sickness to Mrs. Magruder " for conjuring him to make him well," as stated by Mr. Cooper ; and " that Mrs. Magruder had been conjuring Mr. Roberts, and that was the nature of the claim ;" and " that the note was given to Mrs. Magruder for conjuring Mr. Roberts," as testified by Mr. Ledwith. Then they both testify that Livingston expressly stated that he knew at the time he traded for the note the kind of services

she had rendered; that it was for conjuring, as before stated.

These statements of Messrs. Ledwith and Cooper as to what Livingston told them was the consideration of the note, and that he knew what the consideration was when he bought or traded for the note, are *not contradicted* by Mr. Livingston in his testimony on this trial.

True, he says that when he presented the note to Mr. Cooper for payment the latter said " it was good for nothing; it was gotten by conjuring;" and Livingston says he had never heard the word before; and that he said to Mr. Cooper he had heard she was a fortune-teller and a doctor, and that was all he knew about her; yet he does not deny that in that conversation he said to Cooper he knew what the consideration of the note was; that it was for Mrs. Magruder's services in conjuring Mr. Roberts, and that he knew it when he traded for the note.

At the former trial Mr. Livingston's testimony was plainly in contradiction of these statements of Mr. Ledwith and Mr. Cooper, and had strong influence upon the conclusions of the court. Now their testimony is strong and positive upon the point, and he does not contradict their testimony as to these admissions by him to them.

Mrs. Roberts, who was not a witness at the first trial, shows that Mr. Roberts came from Clay county after Christmas, 1876, and Mrs. Magruder then called of her own accord to see Mr. Roberts and proposed to cure him. The note is dated December 29, 1876. The goods are charged by Livingston to Mrs. Magruder December 30, 1876, in payment for which she endorsed the note to him. The only conclusion as to the services rendered by Mrs. Magruder to Mr. Roberts is that she commenced her attentions a very few days, if any, before the date of the note, and continued her ministrations down to about three days prior to his

death, according to the testimony of Mr. Luders. The note was therefore given for some consideration passed anterior to the date it bears, or for services to be performed, or other consideration to be had after the note was given. Mr. Cooper and Mr. Ledwith testify to the declarations of Mr. Livingston that he knew what the consideration was, and that it was for conjuring by a fortune-teller or doctor of that character, and his knowledge of that fact at the time he obtained the note is not contradicted by him on. this trial.

While it is true that Luders testifies to the frequent visits and services of Mrs. M. for three weeks before the death of Mr. Roberts, which may have entitled her to some compensation, yet, as the testimony now stands, it is not shown that those services were performed in consideration of the note, or that the note was given in consideration of these services to be performed..

According to the testimony of Mr. Livingston he gave an adequate equivalent for the note, although Mr. Ledwith and Mr. Cooper got the impression from the interview with Livingston that the consideration was trifling. Their recollections on the subject are not equal to the fact proved It is probable that Mr. Livingston did not, at that interview, give a detail of all the articles sold with their prices.

It is considered proved in this case that the plaintiff admitted, and does not here deny, that the note in question was given in consideration of " conjuring " by Mrs. Magruder, performed or to be performed upon Mr. Roberts to cure him of his illness ; that it was given by him while in low condition of health a few weeks before he died, and that Mr. Livingston knew the consideration at the time he bargained for the note.

Is " conjuring " for the purposes mentioned a good consideration for the promise to pay ? " *Conjuration* signifies

a plot or compact made by persons combining by oath to do any public harm, was more especially used for the having personal influence with the devil or some evil spirit, to know any secret or affect any purpose. Hawkins, in his Pleas of the Crown, says that conjurors are those who, by force of certain magic words, endeavor to raise the devil and oblige him to execute their commands." Tomlin's L. Dict. And such persons were punished as rogues and vagabonds. 4 Bl. Comm., 60. According to Noah Webster *conjuration* is the act of using certain words or ceremonies to obtain the aid of a superior being, the act of summoning in a sacred name, the practice of arts to expel evil spirits, allay storms or perform supernatural or extraordinary acts. *Conjurer*, one who practices conjuration; one who pretends to the secret art of performing things supernatural or extraordinary by the aid of superior powers; an impostor who pretends by unknown means, &c.

Our conclusion is that " conjuring " over a sick man " to make him well" is not a valid consideration for a promissory note; and that no man with a healthy mind would voluntarily give a note for $250, with interest at two per cent. a month, for the services of a conjurer, who proposes to cure a lingering disease by conjury or incantations.

The necessary conclusion is that the plaintiff upon the case made is not entitled to judgment. The onus of showing a valid consideration for the giving of the note was thrown upon him by the proof that the consideration was at least doubtful, and that he knew it when he bought the paper. He failed to show a good and valuable consideration, but submitted his case upon proofs which negatived his right to recover.

The judgment in this case is entered against the defendant, " that the plaintiff have and recover of and from the defendant " the damages and costs. This is not a proper

judgment against the defendant, Cooper, as executor, nor is it to be satisfied of the goods, &c., of the decedent.

In actions against executors and administrators judgment should be given if plaintiff recover against the defendant as executor, &c., to be made out of the goods, etc., of the estate of the deceased, and not against the defendant generally. Flagg vs. Winans, 2 Ind., 123; Barrow vs. Wade, 7 Sm. & Mar., 49; Massingale vs. Jones, 3 Hayw. Tenn., 36; Voorhees vs. Eubank, 6 Iowa, 274.

The judgment is reversed and a new trial granted.