GEO. A. LOGAN, APPELLANT, VS. SLADE & ETHEREDGE ET AL., APPELLEES.

1. A court of equity will prevent, by injunction, a mortgagor from impairing the value of or destroying the property embraced in the mortgage lien, on which the mortgagee has a right, by virtue of his mortgage, to rely for the security of his debt.

2. When a merchant, on the day after the execution of a mortgage on his stock of goods in favor of some of his creditors, disposes of a large amount of them to other creditors in payment of their debts, a court of equity is justified in enjoining him from selling said goods otherwise than for cash, and commanding him to pay the proceeds, after deducting expenses of sale, into the registry of the court.

3. If the remedy by injunction as above proves to be ineffectual, the court may appoint a receiver to take charge of the goods and dispose of them under its direction.

4. An agreement by the mortgagee not to record a mortgage of personal property for twenty days after its execution is a valid agreement between the parties to it, but such mortgage is void as to creditors and purchasers without notice whose rights attach before it is recorded.

5. An instrument in writing, executed by a mortgagee at the time of the execution to him of a mortgage of personal property not to record the same within twenty days, and not then, if satisfactory payments were made in the meantime, unless, in the opinion of the attorneys of the mortgagee, it was necessary to protect his interest, construed to mean, that if for good cause the attorneys of the mortgagee filed the mortgage for record before the expiration of the twenty days, the mortgagor not having up to the time of recording made satisfactory payments, such action on the part of the attorneys, if necessary to protect the interest of the mortgagee, terminated the stipulation not to record the mortgage at all, if satisfactory payments were made.

6. The objection that a suit has been brought prematurely, or before the expiration of days of grace, cannot be raised primarily in an appellate court by a defendant who has both demurred to the bill and answered without interposing such defense.

7. The insufficiency of the proof upon which a chattel mortgage has been recorded cannot be urged primarily in the appellate court, where neither the demurrer, nor the answer to the bill, present it.

8. A stipulation for the payment of attorneys' fees does not avoid a

contract for the payment of money, of which it is a part; nor is a stipulation for the payment of a reasonable amount as attorneys' fees illegal.

Appeal from the Circuit Court for Jackson county.

## STATEMENT.

The complainants, James S. Slade and Charles A. Etheredge, copartners under the firm name and style of Slade & Etheredge; Joseph S. Garrett, George J. Garrett and Robert Y. Garrett, copartners under the firm name and style of Garrett & Sons; J. Pollock and L. Lowenstein, copartners under the firm name and style of Pollock & Co. ; J. M. Eatherly, A. M. Young, George I. Waddey, Thomas Ellis, Will W. Crandall and Harry Jones, copartners as Eatherly Hardware Company, filed their bill in the Circuit Court of Jackson county against the appellant for foreclosure of a mortgage on the 20th of November, A. D. 1884. The bill alleges that the defendant on the 18th day of November, 1884, being largely indebted to the complainants, made and delivered to them his written obligations for the respective sums due to them, payable one day after date. These obligations contained stipulations to the effect that if they were not paid, and judgment was obtained against the defendant upon them, that he would waive the benefit of sections 1, 2 and 3 of the Constitution of the State of Florida, and all laws of said State exempting property from forced levy and sale. That if said obligations were not paid at maturity they were to bear interest at one *per cent.* a

702 SUPREME COURT.

Geo. A. Logan v. Slade & Etheredge, et al.—Statement of Case.

month from date, and if collected by an attorney twenty *per cent.* attorney's fees were to be added and included in the judgment on the obligations. Such were three of the obligations alluded to. The one to Slade & Etheredge was of the same import with an additional stipulation that if defendant should ship them some cotton he would be entitled to one dollar per bale thereon in addition to the value of the same. The bill further alleges that the defendant, to secure the payment of said obligations, made and delivered to the complainants a mortgage on some real estate in said county, and also upon a stock of goods then in defendant's store.

The bill prays for a foreclosure and sale of the mortgaged property, for an injunction to restrain the defendant from selling or otherwise disposing of any of the personal property and for the appointment of a receiver. Upon a hearing on the bill and exhibits thereto and affidavits in behalf of complainants, and counter affidavit of defendant, the Chancellor granted an order restraining the defendant from selling the goods mortgaged otherwise than for cash at not less than invoice prices, and requiring him to deposit in the registry of the court all sums received by him for goods sold since the execution of the mortgage, and also commanding him to deposit as aforesaid at the end of each week all money arising from the further sale of goods. The Chancellor subsequently modified the order by allowing the defendant to retain in his hands a sufficient sum to cover clerk's hire and other necessary

## JUNE TERM, 1891. 703

Geo. A. Logan v. Slade & Etheredge, et al.—Statement of Case.

expenses incurred in conducting the business. Defendant demurred to the bill and the demurrer was overruled, but as this action of the court is not assigned as error it is unnecessary to notice it further.

Defendant answered the bill alleging that his signature to the mortgage and the four obligations described *supra* were procured by fraud, covin, deceit, misrepresentation and a combination between Benjamin S. Liddon, Frank C. Carter, attorneys of complainant, and R. E. Farrish, as agent of the complainants, Slade & Etheredge. That at the time of the signing the said obligations and mortgage he went to the office of Liddon & Carter, in Marianna, to see why they had brought suit against him on the claim of Garrett & Sons, which defendant claimed they had agreed not to sue on. That while there Farrish came in, and he and Farrish had an interview as to the claim of Slade & Etheredge. That he agreed with Farrish to give to Slade & Etheredge a mortgage to secure their claim, provided that the mortgage should not be recorded in twenty days and that if within that time defendant should make satisfactory payments to Slade & Etheredge the mortgage was not to be recorded at all. That Farrish and defendant were alone when this agreement was made, and after it informed Liddon of it and requested him to draw up the mortgage. That Liddon told him that he did not want to break him up, and that he could give him his notes for the amounts due on the other claim, and drew up all the obligations and defendants signed them without reading them or

hearing them read. That there was no agreement that the claims of Garrett & Sons, Pollock & Co., and the Eatherly Hardware Company were to be included in the mortgage to Slade & Etheredge, and no intimation of the kind. That Liddon read the mortgage to him as though it was a mortgage to Slade & Etheredge alone. The names of the other complainants in the mortgage were not read to him by Liddon. That he never knew that the mortgage was to any other person besides Slade & Etheredge until suit was commenced against him. That at the time of the giving the mortgage Farrish and defendant agreed in writing as follows :

"Having received from George A. Logan a mortgage upon certain real estate and personal property to secure a debt due said Slade & Etheredge for one thousand and nineteen and 55-100 dollars, now, as the agent of said Slade & Etheredge, and in consideration of the execution of said mortgage, I do hereby agree that if W. H. Logan, father of said George A. Logan, will give to said Slade & Etheredge a guarantee of the payment of the amount above mentioned, and will also give a sufficient acceptance or security in the opinion of the attorney of said Slade & Etheredge for the further sum of nine hundred dollars, said Slade & Etheredge will advance said amounts to said George A. Logan on sixty days' time. It is also agreed that, unless in the opinion of the attorneys of the said Slade & Etheredge it should become necessary so to do in order to protect their interests, that the aforesaid mortgage is not to be

Geo. A. Logan v. Slade & Etheredge, et al.—Statement of Case.

filed for record for twenty days from this date, November 18th, 1884, and that if payments upon the same at a satisfactory rate are made within said twenty days that said paper is not to be recorded therein.

"R. E. FARRISH,

"For Slade & Etheredge."

Complainants filed their replication to the answer of defendant. Afterwards the complainants filed their petition for the appointment of a receiver. The petition recited the previous proceedings in the case, the injunction and modification of the same, and alleged that during the time that the defendant had been in possession after the issuance of the injunction up to the time of filing the petition for a receiver, the sales averaged only six dollars a day; that the last week's sales by the defendant, reported by him January 19th, was only twenty dollars, of which sum he deducted ten dollars, clerk hire, or fifty per cent. of the entire gross proceeds. That at the rate at which defendant was depositing money in the registry of the court that it would take eleven months to raise the sum required by the order of the court. That such sales had occurred during the business season when sales were best, and that there was reason to expect they would be much less during the dull season which was coming on in the summer. The Chancellor granted the motion.

Testimony was taken by both parties before commissioners agreed on by them.

45

On final hearing the Chancellor decreed that a master of the court should sell so much of the property remaining in the hands of the receiver as was necessary, in addition to the amount realized by the receiver from sales by him, to pay the respective debts of the complainants, including all costs, interest and twenty per cent. attorneys' fees. From this decree and the interlocutory decrees mentioned the defendant entered an appeal to this court and assigned as error :

1. Granting the order of 28th November restraining defendant from selling the merchandise, except for cash, and requiring him to deposit the same in the registry of the court.

2. Granting the order of 14th of February appointing W. H. Milton receiver, and directing him to sell said merchandise.

3. Granting the final decree in the cause.

The other facts in the case are stated in the opinion of the court.

*John W. Malone* and *John H. McKinne* for Appellant.

It was irregular for the court to appoint a receiver upon the plaintiffs' petition therefor when the bill contained no equitable ground authorizing the appointment of a receiver. Pasco vs. Gamble and Poole, 15 Fla. Repts., 562.

The evidence established the following facts :

1. That George A. Logan's signature to said exhibits attached to the bill and marked A, B, C, D and E was obtained by fraud. See Record, pages 25, 26, 27, 28, 29, 210, 249, 254, 256.

This renders these exhibits absolutely void. Bishop on Contracts, secs. 169, 192, *et seq.*; Bishop on Contracts, secs. 169, 192, *et seq.*

2. That it was agreed that said mortgage should be recorded within twenty days from its execution, and not all if the said George A. Logan made satisfactory payments on his indebtedness to Slade & Etheredge. See Record, pages 28, 29, 92; B. L. Liddon's answer to 15th interrogatory, 118; F. B. Carter's answer to 15th interrogatory, 150; R. E. Farrish's answer to 4th interrogatory, also his answer to 17th interrogatory, 158; also George A. Logan's answer to 5th interrogatory, 210.

This renders the mortgage void for all purposes as to the chattels embraced in it. McClellan's Digest, 213, 4 Fla. Repts., 465; 12 Fla., 166.

3. That the said George A. Logan should remain in possession of the mortgaged property with the power to sell the merchandise embraced in said mortgage in the usual course of business and apply the proceeds arising from the sales thereof to his own use. See Record, pages.

The mortgage was admitted to record upon proof by the subscribing witness of the signing and sealing thereof only. There was no proof of delivery. See

certificate of Clerk attached to mortgage. Record, page ——.

The execution includes delivery. Redman vs. Graham, 80 North Car., 231 ; Ruslun vs. Shield & Ball, 11 Ga., 636. And the statute requires proof of execution to entitle the mortgage to record. McClellan's Digest, page 215, sec. 6. Hence the record of this mortgage was improper and it is without the force and effect of a recorded instrument. 4 Fla., 465.

The obligations secured by the mortgage contain stipulation for the payment of attorney's fees in the event suit is instituted on them, which renders them void. 14 Bush Rept., 114 ; 39 Mich., 139 ; 11 Ohio, 417 ; 40 Mich., 517 ; 13 Ohio, 250 ; 11 Neb., 95 ; 11 Cent., L. J., 513 ; 12 Cent., L. J., 337 ; 14 Fed. Rep., 662.

But were they objectionable on this ground, and valid obligations still, they were negotiable and entitled to days of grace, although secured by a mortgage. As to the negotiability see : 33 Ill. 372-6 ; 29 Ill., 497 ; 32 Iowa, 184 ; 23 La. Ann., 767 ; 11 Bush, 180 ; 5 Dellon, 482 ; 18 Kan., 433 ; 6 Saur., 35, 96 ; 17 Cen., L. J., 282 ; 16 Fed. Rep., 89 ; 29 Ind., 158 ; 35 Ind., 104 ; 37 Ind., 513 ; 38 Ind., 322 ; 48 Ind., 100 ; 54 Ind., 388 ; 59 Ind., 583 ; 62 Ind., 82 ; 67 Ind., 10 ; 15 Ga., 529.

As to days of grace see : Jones on Mortgages, sec. 75 ; 5 Allen.

The suit was instituted before the expiration of the

days of grace, and therefore was premature.   21 Cen., L. J., 403.

The amount of the decree was in excess of the principle and interest of the mortgage debt and the attorneys' fees stipulated to be paid.

Besides the mortgage contains no stipulation for attorneys' fees, hence they cannot be recovered out of the mortgaged property.   Jones on Mortgages, sec. 1606.

*Liddon* and *Carter* for Appellees.

RANEY, C. J.:

1. This case is on rehearing.   The preceding statement and the next ten paragraphs of this opinion were prepared by Chief-Justice McWhorter, and are adopted and approved by the court as now constituted.

"The first error assigned is the granting the order restraining the defendant from selling said merchandise except for cash, and requiring him to deposit the proceeds in the registry of court.   The mortgage, if valid, a question which we will consider hereafter, was meant as a security for the debts described therein and intended to be secured thereby.   It is a well-settled principle that a court of equity will restrain a mortgagor from doing any act that will destroy or impair the security upon which the mortgagee, by virtue of the mortgage, has a right to rely for the payment of his debt.   If there were no such right in the mortgagee to

preserve intact his security, and no such jurisdiction vested in a court of equity to aid him in its preservation, mortgages would be of little value. Story's Equity Jurisprudence, vol. 2, secs. 914, 915.

"The evidence shows that the mortgage was executed on the 18th day of November, 1884 ; that on the 19th, the day after its execution, goods were sold from the store to different parties, amounting in the aggregate to the sum of three hundred and five dollars, to pay said parties debts owing them by the defendant. It is true the answer, which was filed February 20th, says that these goods were sold by defendant's clerk in his absence, but in his affidavit previously filed, to-wit : on the 22d day of November, three days after such sales, defendant swears that 'he had not sold or disposed of any goods, wares or merchandise except in the usual course of his business.' This denial in the first place when the transaction must have been known to him and fresh in his memory, and subsequent admission of it and the attempt to avoid its force by saying it was done by his clerk in his absence, bear a suspicious appearance. If it is true that the goods were sold by the Clerk in his absence, it nevertheless remains that he does not say that they were sold without his knowledge or direction. We must assume that such sales were known to and approved by him. It cannot be denied that the sales of over three hundred dollars' worth of goods in one day after the mortgage was made, and no cash realized therefrom, being sold to pay his other debts, was an impairment of the

mortgage, which the mortagagee had a right to prevent, and brings it within the principle mentioned above. There was no error in granting the restraining order.

"The next error assigned is the appointment of a receiver. We think the facts set forth in the petition, and which were not denied, justified the Chancellor in the exercise of a sound discretion in appointing a receiver. The same reason that would induce the Chancellor to grant an injunction to prevent the impairment or destruction of a mortgage security, when the injunction was found insufficient for the purpose intended, would justify him in appointing a receiver when it was made apparent to him that it was necessary for the preservation of the property intended as a security. It was a apparent from the amount of sales that a longer time would elapse before the complainants could realize the amounts due them than the law would require them to wait. It was also apparent that the expenses were bearing too heavy a proportion to the amount of sales, and that some quicker and less expensive method was necessary.

"It will be seen from the pleadings that the bill seeks a foreclosure and sale of the property. The answer admits the making the morgage and seeks to avoid it on two grounds; that its execution was procured by fraud, and that the complainants agreed not to record it in 20 days, and not then if satisfactory payments were made. These are the only two points that

are raised by the bill and answer, and all that this court would be justified in deciding.

"A very careful scrutiny of the evidence convinces us that while the defendant, whom it seems was young and without experience, was very probably not aware of the full legal consequences of the papers he signed at the time he executed them, that there was no fraud or misrepresentation on the part of the complainants or their agents to induce him to execute the mortgage and obligations. He did it voluntarily, and if he made a hard bargain he cannot complain. The answer does not deny any of the allegations of the bill. It sets up matter in avoidance, and defendant must be held to prove them. Lucas vs. Bank of Darien, 2 Stewart, 280. His proof is his own testimony and what inference might be drawn from the fact that the paper, *supra*, given to him by Farrish, agent for Slade & Etheredge, and which was the only one of all of them which he was to retain, speaks of no mortgage but one to Slade & Etheredge.

"This in connection with the fact that all the claims were embraced in one mortgage, we admit is a strong circumstance in support of his testimony, but we think it is overborne by the testimony of McKinnon and Farley who are disinterested witnesses, by the testimony of Farrish, who is also disinterested as to the mortgage to all the complaints in the bill except Slade & Etheredge, and there is no contention as to their mortgage

except as to recording it, by the evidence of Liddon and Carter, who all swear that the mortgage was read in full to defendant, and by his own letter to Liddon and Carter that he would come to their office and either pay or secure the claim then in suit against him of Garrett & Sons, the other claims mentioned in the mortgage coming to their hands after he wrote the letter, and before executing the mortgage.

"The agreement not to record the mortgage within twenty days, and not then if satisfactory payments were made, is a question of some difficulty. An agreement not to record a mortgage of personal property within a limited time not unreasonably long would not in our opinion vitiate it so far as the parties to it were concerned, in the absence of a conflict with the rights of purchasers and creditors in the intervening time.

"If it was clear that by a contemporaneous written agreement the mortgagee had bound himself not to record the mortgage if satisfactory payments were made on it in the twenty days, an agreement not to do the very thing that the statute says is indispensable to its validity, we should be inclined to hold, if such payments were made, that the mortgage was rendered void by such agreement as a security for the unpaid balance after deducting the 'satisfactory payments,' so far as the personal property was concerned. The proviso that 'unless in the opinion of Slade & Etheredge's attorneys it should be necessary to record the

mortgage in order to protect their interests,' applied
only to the first clause as to the recording within the
twenty days. It had no force as to the contingency of
making satisfactory payments in the twenty days, that
is, if the mortgage was not recorded in the twenty
days, and in the meantime the mortgagor made such
payments, it would have been the absolute right of the
mortgagor if the agreement was valid, that the mort-
gage should not be recorded.

"But the right to record the mortgage within twenty
days if the attorneys of Slade & Etheredge should
think it necessary, and the exercise of it by recording
the same before the lapse of that time, if for proper
cause, necessarily nullified the last clause not to record
it if satisfactory payments were made, because the
vitality of the agreement was dependent upon its not
being recorded in the twenty days, or if wrongfully
recorded within that time that such payments were
made before the time mentioned had elapsed. After
its record under the power to do so if thought neces-
sary to protect the interest of Slade & Etheredge, it
be recorded before any satisfactory payments were
made, the rights of the mortgagor under the latter
clause of the agreement necessarily terminated.

" The facts set forth and considered heretofore as be-
ing sufficient to justify the granting of the restraining
order were also sufficient to justify the attorneys for

Slade & Etheredge in the exercise of the discretion vested in them in filing the mortgage for record."

II. It was also held in another paragraph of the opinion that certain points made in this court by the appellant could not be considered because they had not been made in the lower court. These points were: That the suits were prematurely brought, that the mortgage was not recorded in accordance with law or not sufficiently proven to entitle it to be admitted to record, and, third, that the obligations sued on were void because of the stipulations therein to pay attorneys' fees. A rehearing was applied for on the ground that there was error in this conclusion, and some doubts having arisen as to this conclusion, the rehearing was granted.

In Southern Life Ins. & T. Co. vs. Cole, 4 Fla., 359, it was held that an appeal in equity is substantially a rehearing of the cause, and the appellate court has the right to look into the whole case as it is presented by the record, and may even consider points made primarily there if raised by the pleadings and proofs, yet care must be taken that neither the appellant, nor appellee, be permitted to surprise or mislead his adversary, or to make objections which if made in the court below might have been obviated. See also Fairchild vs. Knight, 18 Fla., 770; Proctor vs. Hart, 5 Fla., 465; Beekman vs. Frost, 18 Johns., 344; Bank of Utica vs. Smedes, 3 Cowen, 684; 2 Daniell's Chancery Pl. & Pr., 1488, *et seq.*

In the case before us there was a demurrer to the bill as being multifarious, and because a prior mortgagee of the property was not a party, and this demurrer having been overruled the defendant answered, but in his answer he does not raise any of these defenses.

The objection that the suit was prematurely bought is based upon the idea that the writings obligatory sued on and secured by the mortgage were entitled to grace, and that the days of grace had not expired when the bill was filed. We will not be understood as assenting to the proposition that a bill single or writing obligatory is, either by the law, merchant or the statute of this State, entitled to grace. Randolph on Commercial Paper, sec. 1056; Tiedman on Commercial Paper, sec. 32; Daniell on Negotiable Instruments, secs. 31, 34, 620; Skidmore vs. Little, 4 Texas, 301; Field vs. Mallett, 3 Hawks, 465; McClellan's Digest, sec. 86, p. 832; Cotton vs. Williams, 1 Fla., 37; Bellas vs. Keyser, 17 Fla., 100, 106-7. But however this may be, our opinion is that if the defendant had wished to test the merit of such a defense he should have done so by the proper pleading in the lower court, and at an early stage of the proceedings therein. Assuming that such a defense could have been found available, considering the nature of the suit and the character of the instruments secured by the mortgage, it was a defense which went not in bar of the cause of action, but only to the bill or in abatement of the suit, and should have been interposed promptly and before

the defendant could be said to have waived it. 1 Daniell Chy., 626, 627; Palmer vs. Gardner, 77 Ill., 143. The defendant did not attempt to raise such a defense by his pleadings, and to permit it to be raised here after a long and expensive contest as to the validity of the mortgage, upon the grounds stated in the original opinion, would not only encourage the most misleading practice, but work a great wrong by permitting the defendant to do now what he cannot reasonably be deemed to have ever intended before he appealed to this court.

The basis of the point that the mortgage was not duly proven for record, and therefore not legally recorded, and hence is not binding as 'a mortgage of the personal property mentioned therein, is an alleged deficiency in the affidavit of one of the subscribing witnesses upon which the instrument was admitted to record as such oath is shown by the appeal transcript as stated in the certificate of record endorsed on the original mortgage annexed to the bill as a part thereof. The bill distinctly alleges that the instrument had been correctly recorded on the proof whose sufficiency is now attempted to be assailed. By failing under these circumstances, to take exception in the lower court by proper pleading to the sufficiency of the proof and legality of the record, and contesting the foreclosure of the mortgage throughout a firmly contested and expensive litigation on other grounds, involving that of the right of the mortgagees to record the mortgage at the time they did, the appellant

must be held to have waived any defect there may be in such proof. The defendant has tacitly admitted the sufficiency of the proof and the legality of the record in so far as it is dependent upon such proof throughout the litigation, and up to a point at which he cannot be permitted to take exception to it without imposing upon the complainants great hardship and loss which proper practice upon the part of the appellant could have obviated. Proper practice dictates that he should be held to the position of a tacit admission of the sufficiency of the record knowingly taken by him in the lower court. The objection, taking the most favorable view of it, is not one fatal to the complainant's claim, but like that of the prematureness of the suit, discussed above, it would only go to the bill, and assuming the objection to the proof to be good and that it could not, had it been made below, have been cured by showing, as for aught we know may appear on the record in the clerk's office, that there was the most sufficient proof of the execution of the instrument, there can be no doubt, in view of the testimony, that had complainants been compelled to dismiss the bill they could have had it recorded on due proof and renewed the suit without delay and without any considerable expense or loss of time.

The third ground, which is that the obligations are void, because of the stipulation therein for the payment of attorneys' fees, is also one which properly

should have been taken by demurrer to the bill. There is no such ground in the demurrer filed, nor is it made elsewhere by the defendant's pleadings. However, if the law rendered any and all contracts of which a stipulation to pay attorneys' fees was a feature, absolutely void and their enforcement contrary to public policy under any and all circumstances, which in effect is the position of appellant here, we are inclined to think the court should refuse to enforce such contract, although the effect of the feature was called to their attention primarily on appeal. Myrick vs. Pittman, 19 Fla., 692; Crosby vs. Huston, 1 Texas, 203; Foster vs. Wilson, 5 Montana, 53. This however, is not the effect of such a stipulation in this State, nor elsewhere according to the authorities which we have been able to find. The decisions of this court affirm the legality of a stipulation for reasonable attorneys' fees. L'Engle & Hartridge vs. L'Engle, 21 Fla., 131; Long vs. Herrick, 26 Fla., 356, 8 South. Rep., 50. No contest as to the reasonableness of the amount stipulated for was made in the Circuit Court, and it is not attempted to be made here, if it could be.

The decree is affirmed.