(No. 19467.

THE ALLIS-CHALMERS MANUFACTURING COMPANY, Appellant, *vs.* FRANCES W. HAYS *et al.* Appellees.

*Opinion filed April 17, 1930.*

CHARLES E. LAUDER, and FREDERICK H. LAUDER, for appellant.

L. H. HANNA, C. S. PEACOCK, and R. W. COWDEN, guardian *ad litem,* for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellant, the Allis-Chalmers Manufacturing Company, filed its bill in the circuit court of Warren county for the partition of certain real estate in the city of Monmouth. Appellees answered the bill, the cause was referred to a master to take the evidence and report his conclusions, the master recommended that the bill be dismissed for want of equity, exceptions to the report were overruled, a decree was entered as recommended, and an appeal has been prosecuted to this court.

Isaac M. Eastman and John W. Hays were engaged in the plumbing business. On February 23, 1902, they purchased the real estate in question, on which they erected a

two-story brick building, part of which they occupied with their business. On September 3, 1911, Hays died intestate, leaving his widow, appellee Frances W. Hays, and three minor children, one of whom has since died, leaving his mother and a brother and sister as his only heirs-at-law.

On January 29, 1923, appellant began a suit in the circuit court of Warren county against the Monmouth Stone Company, Isaac M. Eastman, and others. The suit was based on seven promissory notes. Four of them were dated July 20, 1921. They were signed by the Monmouth Stone Company and were payable to appellant. Three of them were for $2500 each and one was for $3182.75, and on the back of each was the name of Eastman and other defendants under the following language: "For value received, I, we, or either of us, hereby guarantee payment of the within note and waive presentation to the maker, demand of payment, protest or notice of protest." The three other notes were payable to the Monmouth Stone Company. They had blank indorsements on the back by the payee, Eastman and the other defendants. One of them was for $1000, was dated May 8, 1921, was due in six months and was signed by F. S. Anderson. Another was for $2500, was dated January 1, 1921, was due in one year and was signed by Fred E. Anderson. The third was for $1000, was dated September 7, 1920, was due in one year and was signed by Abram V. Brokaw. On May 22, 1923, judgment was rendered on the seven notes in favor of appellant, against Eastman and other defendants, for $18,830.71. The liability of Eastman on these notes arose solely from his indorsement thereon. The makers of the last three notes were not included in the judgment, which was against the indorsers, only. On the day after the judgment was rendered an execution was issued and later was returned unsatisfied. On August 14, 1925, another execution was issued and levied upon the undivided one-half of Eastman in the real estate in question. On November 20, 1925, the premises

were sold to appellant for $4000 and a certificate of purchase was issued to it. The premises were not redeemed, and on February 23, 1927, the sheriff issued a deed to appellant, which deed was the basis of this partition suit. On January 6, 1925, Eastman and wife conveyed the real estate to Mrs. Eastman, and Eastman, in writing, appointed her as his attorney and agent to collect the rents. Later, Eastman filed a voluntary petition in bankruptcy. On the day the sheriff's deed was issued appellant filed its bill for partition, making Eastman and wife, the heirs of Hays and certain tenants parties defendant, alleging that the heirs of Hays owned one-half of the real estate subject to the dower interest of his widow, and that appellant owned the other half under its sheriff's deed. Answers were filed, which denied that appellant acquired any interest under the sheriff's deed or that the title was held by tenants in common, and alleged that the property belonged to Hays and Eastman as a partnership and was subject to the debts of the partnership, a large amount of which remained unpaid. Several hearings were had before the master. The entire record upon which the judgment for $18,830.71 was based, including the seven notes above described, was introduced in evidence. The master served notice on March 22, 1928, that on March 31, 1928, the evidence would be closed. On May 7, 1928, appellant submitted its brief to the master and on May 12 the master made his finding. On May 31 appellant made a motion before the master to re-open the case, to cancel a certain stipulation entered into before the master with reference to the notes, and to introduce testimony in rebuttal concerning the basis of the judgment in favor of appellant. Affidavits were filed in support of the motion, setting up certain facts which the files of the Monmouth Stone Company showed concerning the dates of the indorsements upon the notes. The master refused to open the case, the motion was renewed before the chancellor, it was overruled and a decree was entered.

The basis of the decree was that the judgment of appellant, upon which the real estate was sold, was based upon seven promissory notes, three of which were dated prior to July 1, 1921, and four dated subsequent to that date; that the first three of said notes, when reduced to judgment, were effective against real estate under operation of the statute in force prior to July 1, 1921, and four of them, when reduced to judgment, were effective against real estate under operation of a statute enacted July 1, 1921; that these two statutes were different as to the procedure under executions; that under the statute in force from 1917 to 1921 the sale upon execution was to take place at the expiration of the equity of redemption, and that the sale on execution on contracts after July 1, 1921, was to take place at the time of the levy; that because of the conflict in these statutes no right, title or claim in the premises sold passed to appellant under the sheriff's deed.

As grounds for reversal it is urged by appellant that the attack upon this judgment was a collateral attack; that error was committed in considering evidence introduced to assail the judgment and the proceeding thereon, which culminated in the sheriff's deed; that the court erred in denying the motion of appellant, made before the master and renewed in open court, to present evidence in rebuttal with reference to the basis of the judgment, and that the court erred in taxing the fee of the guardian *ad litem* as a part of the costs.

Prior to 1917 all sales under executions took place upon notice immediately after the levy, as provided in sections 16 to 30 of chapter 77 of our statutes. These sections of the statute as amended in 1917 provided that when any real estate was levied upon by virtue of any execution, it should be the duty of the sheriff making such levy at once to make and deliver to the judgment creditor a certificate of indebtedness, file a duplicate thereof for record, and if no redemption was made the sale was to take place at the

expiration of the period of redemption, whereupon a deed was to be executed to the purchaser. (Laws of 1917, p. 558.) In 1921 sections 16 to 30 were again amended, making the law substantially the same as it was prior to 1917, except that section 2 of the amendment provided that it should not apply to sales of real estate made pursuant to a judgment or decree for breach of contract entered into on or after July 1, 1917, and before July 1, 1921, but such sale should be governed by the provisions of sections 16 to 30, which were in force between those dates. Laws of 1921, p. 500; *Ryan* v. *Allen*, 312 Ill. 250; *Hall* v. *American Bankers Ins. Co.* 315 id. 252.

Section 32 of chapter 77 provides that any deed issued under the provisions of the act shall convey to the grantee all the title of the person against whom the execution was issued. Section 33 of the same chapter provides that any deed issued shall be *prima facie* evidence that the provisions of the law in relation to the sale of property for which it was given were complied with, and it was so held by this court in *Morey* v. *Brown*, 305 Ill. 284, and *Mayne* v. *Drury*, 295 id. 533.

Appellant introduced the record of the judgment upon which the deed was based, the execution issued the day following its recovery, the alias execution under which the levy was made, the return of the sheriff, the recorded certificate of purchase and the recorded sheriff's deed. This evidence made out a *prima facie* case establishing appellant's title to one-half of the real estate. To overcome this *prima facie* case appellees offered in evidence the seven notes, which showed that three of them were executed prior to July 1, 1921, and four after that date. Eastman did not become a party to this judgment because he signed the notes originally, but he became a party to the judgment because he indorsed the notes after they were signed. Unless he indorsed them prior to July 1, 1921, the levy and sale were valid. The transfer of a note is not retroactive. It is gov-

erned by the laws in force at the time of the transfer, and the transfer takes effect when it is completed by delivery and not before. (8 Corpus Juris, 345.) . The contract of an indorser is a new and independent contract arising after the execution of the note, and the extent of his liability is determined from his indorsement and the date of its execution. (3 R. C. L. 1149, 1150; 8 Corpus Juris, 375; Joyce on Defenses to Commercial Paper,—2d ed.—sec. 42.) Section 45 of our Negotiable Instruments statute provides that except where an indorsement bears date after the maturity of the instrument, every negotiation is deemed *prima facie* to have been effected before the instrument was due. All of these three notes were due after July 1, 1921. There was no evidence offered as to the actual date upon which Eastman indorsed them. There was no legal presumption that he indorsed them before July 1, 1921. The only legal presumption was that they were indorsed before maturity, which may have been after July 1, 1921. If the indorsements of Eastman were made after July 1, 1921, the statutory amendment of that date was applicable and the sale and deed were valid. The mere introduction of the three notes showing that they were dated prior to July 1, 1921, did not establish that the indorsements of Eastman were executed prior to that date. It did not overcome the *prima facie* case made by the appellant by the introduction of the proceedings upon which its judgment was obtained and the subsequent steps taken thereunder.

Appellant insists that the master and the chancellor were in error in refusing to permit appellant, after the evidence was closed, to introduce evidence as to when the three notes were actually indorsed by Eastman. In support of this motion affidavits were filed tending to show that the indorsements were actually made on July 25, 1921. It is insisted by appellees that the solicitors for appellant had access to these notes and to the books and files of the Monmouth Stone Company, from which the notes were received,

during the taking of evidence before the master, that by reason thereof appellant could have offered this proof during the hearing, and that the offer came too late. The master in his findings held that the dates of the notes were controlling. As soon as this finding was made appellant made the motion for leave to show the actual dates on which the indorsements were made. Prior to the report of the master appellant had no knowledge that the master would so hold. If the master was of the opinion that the dates of the three notes were controlling he should have permitted appellant to open the evidence and show the actual dates of the indorsements by Eastman. The introduction of the three original notes, however, did not establish the dates of the indorsements by Eastman and did not overcome the *prima facie* case made by appellant under the statute, therefore proof by appellant of the actual dates of the indorsements was not material.

There is another reason why the decree entered was erroneous. Where a court of law renders a judgment it retains supervisory jurisdiction to see that its process is executed as provided by law. A court of law may exercise equitable jurisdiction over its processes, and before a deed has issued the court may, upon a proper showing, set aside an execution sale and the certificate made by an officer of the court, upon motion made before the time of redemption has expired and upon notice to the purchaser and the parties to the suit. (*McDaniel* v. *Wetzel*, 264 Ill. 212; *Dobbins* v. *Wilson*, 107 id. 17; *Mason* v. *Thomas* 24 id. 286.) Under certain circumstances, where the judgment debtor fails to exercise his remedy at law he has a remedy in equity, but where a judgment debtor has ample remedy, by motion, to set aside a sale of land on execution and fails to do so, he will be required, on a bill in equity after the time of redemption has expired, to show a case loudly calling to equity for relief before the sale will be set aside. He must show a strong case of fraud, wrong or oppression.

(*McDaniel* v. *Wetzel, supra; Skakel* v. *Cycle Trade Publishing Co.* 237 Ill. 482; *Hay* v. *Baugh,* 77 id. 500.) In 23 Corpus Juris, page 693, it is said: "If the defect or irregularity relied on makes the writ, levy or sale void rather than voidable it may be urged by way of collateral attack, as in ejectment; but it has been held that in order to be received with favor the collateral attack should come from some creditor or purchaser claiming an intervening right or lien. On the other hand, if the defect or irregularity relied on, whether occurring before the sale or in the conduct of the sale, makes the writ, levy or sale merely voidable and not void, it cannot be urged by way of a collateral attack but only on motion to set aside or in a direct action instituted for that purpose." In this case the judgment upon its face was valid and the proceedings thereunder were regular. The sale was not void. At most it was merely voidable. The evidence shows that Eastman knew of the sale on the day it was made. If the sale was not made as provided by statute he had an adequate remedy, within the period of redemption, by application to the court which rendered the judgment, or, if the facts justified it, he could have made application to a court of equity for relief, but he did neither. He permitted the sale to stand. When the bill for partition was filed he asked for no affirmative relief by cross-bill or otherwise, and he saw fit to rely upon the averments of his answer that appellant took no title under the deed from the sheriff. He conveyed his title to his wife and later went into bankruptcy, but the wife obtained no better title than he had. Under the pleadings and the evidence the relief granted by the decree was erroneous.

It is claimed by appellees that the property was partnership property and was liable for the outstanding obligations of the partnership before the debts of the individual partners could be satisfied therefrom. This contention is not sustained by the evidence. The property was conveyed to Hays and Eastman as co-tenants. They mortgaged it

twice and their wives joined in the mortgages. Hays died in 1911 and Eastman was the administrator of the estate. There is no evidence of any outstanding debts against the partnership. In 1925 Eastman conveyed his interest to his wife, which conveyance was contrary to the present claim that this was partnership property.

Appellant insists that the court improperly taxed the fee of the guardian *ad litem* as a part of the costs; that the amount taxed was excessive under the evidence, and that under section 40 of the Partition act every party is required to pay his equitable portion of the costs, unless the defendants, or some of them, shall interpose a good and substantial defense to the bill, in which case the party making such substantial defense shall recover his costs against the complainant according to the rules of equity. In *Ames* v. *Ames,* 151 Ill. 280, it was held that a court of chancery has power to allow a guardian *ad litem* fee and tax as costs a reasonable solicitor's fee for prosecuting or defending a suit by or against infants, and that the power to so tax is not derived from section 40 of the Partition act but from section 6 of the Chancery act. In *Carlberg* v. *State Savings Bank,* 312 Ill. 181, it was held that the standard for determining the amount to be allowed a guardian *ad litem* is the usual and customary fee for similar services where the fee is the subject of contract between a solicitor and a client. The fee of $150 as taxed was not excessive under the evidence presented, but, in view of the fact that the decree must be reversed, the fee of the guardian *ad litem* and the costs of this appeal should be taxed against appellees.

The decree will be reversed and the cause remanded, with directions to enter a decree of partition as prayed in the bill.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*