John W. Spiller, Administrator with the Will Annexed of the Estate of M. J. Cockrum, Deceased, Appellee, v. Antonia Basso Riva and Bronko Yonkovich. Antonia Basso Riva, Appellant.

Opinion filed January 4, 1935.

D. F. MOORE, of Benton, for appellant.

STONE & FOWLER, of Marion, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Franklin county, rendered in a suit to foreclose a mortgage.

The bill alleges that Tony Basso and Antonia Basso, on August 28, 1921, being indebted to the First National Bank of Sesser, Illinois, executed four notes, each for $1,000, and on October 21, 1921, did make and deliver to said bank two notes, each for $1,000; all of said notes due in 12 months from their date, with interest from maturity at seven per cent payable semiannually; that to secure said indebtedness, they did, on January 19, 1922, make and deliver to said bank the real estate mortgage in question; that said notes and mortgage were assigned to one M. J. Cockrum, who died on December 23, 1931; that complainant was duly appointed administrator, with the will annexed, of his

estate; that on August 7, 1923, said Tony Basso died, and that afterwards said Antonia Basso intermarried with one Riva, and that her name is now Antonia Basso Riva; that said principal sums, together with interest on $2,000 from October 11, 1924, and interest on $4,000 from February 28, 1930, remain due and unpaid; also, that Bronko Yonkovich had acquired some interest in the mortgaged premises, but that same was junior and inferior to the lien of said mortgage.

To this bill Yonkovich made answer, while Antonia Basso Riva filed two special pleas, the first of which set up the statute of limitations, that is to say, that the cause of action did not accrue within 10 years of the filing of the bill; that no promise to pay the debt was made within said 10 years, nor was any payment made thereon within said time. The second plea was a denial that the First National Bank of Sesser did indorse or deliver the notes or mortgage deed in question to Cockrum, as alleged in the bill. To these pleas complainant filed the general replication in chancery. The cause was heard, and the court entered a decree for the complainant, from which only Antonia Basso Riva has appealed.

Various grounds are urged why the decree should be reversed, the first of which attacks the sufficiency of the bill, it being contended that the bill should charge a payment or a new promise to pay within the period of 10 years prior to the filing of the complaint. To this there are a number of answers.

First, it is alleged that there was due the principal sums of the notes, "with interest on $2,000 thereof from October 11, 1924, and with interest on $4,000 thereof from February 28, 1930." The fair and reasonable inference from such averment is that all sums of interest due prior to said dates were paid or had been satisfied. We think the bill in this respect was sufficient. Moreover, no demurrer was filed to the bill, and the rule is that all formal objections to a bill are

waived by failure to demur, and the going to a hearing on the merits. *McCloskey v. McCormick,* 44 Ill. 336; *Negaunee Iron Co. v. Iron Cliffs Co.,* 134 Mich. 264, 96 N. W. 468, at page 473; 21 Corpus Juris, p. 430, sec. 458.

By filing the statute of limitations in a special plea, to which appellee replied, appellant assumed the burden of proving same. Whitehouse Equity Practice, sec. 255. The statute of limitations is an affirmative defense, and the burden of proving it rests upon the party who puts it in issue by plea or answer. This is the rule in chancery. *Sanders v. Merchants' State Bank,* 349 Ill. 547, 564. It is also true in actions at law. *Schell v. Weaver,* 225 Ill. 159.

Appellant contends that there was no competent proof of any payment made on the debt within the 10 years before the suit was instituted, and that the indorsements of interest payments on the notes were but self-serving statements.

Complainant offered in evidence the mortgage, as Exhibit No. 1, and by separate offer tendered the six notes as Exhibits Nos. 2 to 7 inclusive, together with all indorsements upon the front and back thereof. Appellant made the following objection: "Exhibit No. 1 is objected to for the reasons that it is not given to secure the payment of the six notes designated as complainant's Exhibits Nos. 2 to 7 in this case, but is given to secure the payment of six other notes described in the mortgage." It is thus seen that no objection whatever was made to the notes, hence they were properly admitted in their entirety, including all indorsements both on the face and back of same.

Whether an objection, properly made, should have been sustained, is of no moment, as it is the settled rule of law that evidence received without objection must be considered by the court and given its natural probative force, regardless of whether or not it is legal evidence. *Ascher Bros. Amusement Enterprises v. In-*

dustrial Commission, 311 Ill. 258; Peabody Coal Co. v. Industrial Commission, 289 Ill. 449. Also, as held by the court in Ingram v. Hammar Bros. White Lead Co., 273 Ill. App. 152; and to the same effect, 23 Corpus Juris, p. 39, sec. 1783.

"When the instrument, or an acceptance or any indorsement thereon is dated, such date is deemed prima facie to be the true date of the making, drawing, acceptance or indorsement as the case may be." Cahill's St. ch. 98, ¶ 31 (sec. 31, ch. 98, Smith-Hurd R. S. 1933). Collins v. Ogden, 323 Ill. 594.

The natural probative force of indorsements of interest on the back of a note is that they are evidence of payments by the obligors, and, if they bear dates, that the payments were made as of such times. It is almost universally so regarded in the business world, and conveys such impression to the average reasonable person's mind in the absence of countervailing proof. The evidence was before the chancellor, admitted without objection, and the law required its consideration by him, regardless of whether it would have been excluded, if timely objection had been made. The court was justified, upon its consideration, in drawing therefrom the belief which it would create in the average reasonable mind; that is, that the indorsements were testimony of payments of interest by the makers, made at or about the dates they bear.

There was sufficient proof to make a prima facie case of payments by the obligors, within the period of 10 years anterior to filing the bill of complaint; moreover, the appellant had the burden, under her plea, of establishing the contrary. This she did not do, nor even attempt to do. We think the chancellor's conclusion, in denying the truth of the first plea, was warranted.

Appellant further contends that there is no sufficient evidence that the notes were assigned and transferred by indorsement to Cockrum. The proof is that the in-

struments were in his possession, and by him delivered to his attorney, who retained their custody until the death of the former, when they were turned over to the administrator of his estate. The notes, on their back, bear the indorsement: ''Pay to the order of M. J. Cockrum without recourse. First Nat'l Bank, Don Lionberger.''

The law seems to be well established that possession of a promissory note, whether it be by the payee or an indorsee, is prima facie evidence of ownership, even if the indorsement is in blank; and, with a stronger reason, where the possessor is the holder of a note, specially indorsed to him by a third party. *Henderson v. Davisson,* 157 Ill. 379; *Palmer v. Gardiner,* 77 Ill. 143; *Spears v. Wilson Sewing-Machine Co.,* 50 Mich. 534, 15 N. W. 894; 8 Corpus Juris, p. 1006, sec. 1309; 3 Ruling Case Law, 980. The proof was ample to establish the prima facie ownership by Cockrum of the notes in question.

The indorsement was undated, and appellant insists that in such event it will be presumed that the indorsement was of the same date as the execution of the notes; and that, as the mortgage was executed some months subsequent to the making of the notes, it (the mortgage describing notes executed to order of the First National Bank of Sesser) was not given to secure the notes in question, as they were at that time owned by Cockrum, and not by the bank; and therefore that the mortgage did not secure the notes in question.

So far as we are advised, the only legal presumption in this regard is that created by Cahill's St. ch. 98, ¶ 65 (sec. 65, ch. 98, Smith-Hurd R. S. 1933), to the effect that except where an indorsement bears date after maturity, every negotiation of the instrument is presumed to have been made before same was overdue; and as held in *Allis-Chalmers Mfg. Co. v. Hays,* 339 Ill. 230, 236. Appellant cites some decisions as in support of her position, but these, upon inspection, will all be found to have been rendered before July 1,

1907, the date when the Negotiable Instruments Law, of which said section 65 is a part, became operative. The only legal presumption, under the statute, is that these notes were negotiated by indorsement before their maturity, which was several months after the date of execution of the mortgage; hence might well have been the property of the bank at the time the mortgage was given.

Aside from this, however, we do not deem the question properly raised. Appellant, by her pleas, proposed but two issues,—the statute of limitations, and nonassignment of the notes. These were the only issues in the case, so far as she was concerned. Had she desired to assert the defense now claimed, she should have raised the proposition by special plea or answer. Having failed to do so, she cannot, for the first time, in a reviewing court, create a new defense in the case. *Butler v. Miller,* 208 Ill. 231.

It is further urged that there is a variance between the terms of the mortgage, and the notes; the latter each reciting that it bore interest after maturity, while the former stated that the notes secured by it carried interest from date of execution. R. D. Webb, former president of the bank, who drew all the instruments, testified that the notes in question were the ones which the mortgage was given to secure. It seems obvious that the apparent variance was merely a clerical error.

The decree found that Tony Basso, on April 17, 1922, paid the interest on each of the four notes bearing date August 28, 1921; that he paid interest on three of said notes September 11, 1922, and interest for the same period on the fourth note, on December 1, 1922. It further found that Antonia Basso Riva paid the interest on said notes on December 24, 1923, and on divers dates thereafter. This is claimed as error, as not being supported by the evidence.

It appears that Tony Basso departed this life on August 7, 1923. For the reasons previously stated, we are of opinion that the indorsements on the

notes are prima facie proof that the payments were made by the makers. As to which of the two primary obligors made the payments up to the date of the death of Tony Basso, there is no evidence; hence the court, in our judgment, could not properly find that they were paid by him. It should have found such payments were made by the makers, or one of them, without specification of name.

After the death of Tony Basso, the inference from the proof is plain that Antonia Basso Riva, as the surviving primary obligor, was the person who made the interest payments, and as to her, after Tony Basso's death, the court found correctly.

The decree of the chancellor is in all things affirmed, except the findings as to interest payments made by Tony Basso, and as to such same is reversed, and the cause remanded, with directions to amend the decree to conform to the views herein expressed.

*Affirmed in part, reversed in part, and remanded with directions.*