FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF OTTAWA, Plaintiff-Appellee, *v.* LAUREL R. CHAPMAN, JR., *et al.*, Defendants—(William F. Roberts *et al.*, Defendants-Appellants).

Third District   Nos. 82—580, 82—581 cons.

Opinion filed July 18, 1983.—Rehearing denied September 8, 1983.

Edwin R. McCullough, of Chicago, and Edward J. Kuleck, Jr., of Ottawa, for appellants.

Thomas B. Cassidy and Cathleen M. Keating, both of Martin, Craig, Chester & Sonnenschein, of Chicago, for appellee.

JUSTICE ALLOY delivered the opinion of the court:
This is a consolidated appeal from related mortgage foreclosure

actions, wherein decrees of foreclosure were entered and sales held and approved. The defendants are James and Norma Thomas, William and Nancy Roberts, Clifford and Adela Crockett, and Michael and Linda Dunning. They were contract purchasers, under installment contracts for deed from Laurel Chapman, Jr., and they appeal from the denial of their post-judgment motion to vacate the foreclosure decrees and subsequent sales pursuant to those decrees. The plaintiff is First Federal Savings and Loan Association of Ottawa (hereinafter First Federal). Defendant Laurel Chapman, Jr., is not a party to this appeal. The defendants argue that the foreclosure decrees and subsequent sales should be set aside because of First Federal's failure to comply with the applicable law governing foreclosures.

The records in these cases indicate that the Thomases, Roberts, Crocketts, and Dunnings were purchasers, by installment contracts for deed, of homes from defendant Laurel Chapman, Jr. Chapman had initially purchased the homes through a mortgage loan from First Federal. On January 8 and 9, 1981, First Federal filed two separate verified mortgage complaints against Chapman and these defendants. Apparently as a response to the foreclosure actions against him, Chapman filed for bankruptcy on January 21, 1981.

In one circuit court action, 81 CH 7, in which the Roberts, Crocketts and Dunnings were named defendants, the Roberts and Crocketts filed unverified answers and affirmative defenses. The answers neither admitted nor denied the complaint, but demanded strict proof. The affirmative defenses asked for protection as to them, as contract purchasers, without stating any other facts or bases. These were filed on January 28, 1981. In the other action, 81 CH 6, the defendant Thomases filed a similar answer and affirmative defense on February 4, 1981. The Dunnings later appeared in 81 CH 7, but filed no responsive pleading.

On July 1, 1981, First Federal filed an amended complaint in 81 CH 7. Defendants therein responded with a "Motion to Intervene, Continue for Additional Pleadings, and Consolidation of the Captioned Cases." An additional 30 days for pleading was requested. On August 14, 1981, the court entered its order allowing intervention, denying consolidation, and ordering additional pleadings to be filed before August 28, with an answer or other responsive pleadings before September 11, 1981. A subsequent order of August 28 granted the defendants an additional 28 days within which to file responsive pleadings to the foreclosure complaint. A similar order was entered in 81 CH 6, the Thomases' suit, giving them an additional 28 days from August 28 within which to file responsive pleadings. Thereafter, on October 1,

1981, the defendants, in the two cases, filed a "Response to Complaint," wherein they requested additional time within which to answer the complaints by First Federal. The basis for this request was the fact that they had instituted an action in Federal court against Chapman and First Federal involving the properties and the foreclosure actions. First Federal responded to the defendants "Response" by filing a motion to strike the response. First Federal's motion to strike was allowed by the court in the two State court actions, with the court giving the defendants until October 21, 1981, to make answer to the foreclosure complaints.

The defendants, on October 21, 1981, filed their motions to strike and dismiss First Federal's complaints, pursuant to section 48 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 48, now Ill. Rev. Stat. 1981, ch. 110, par. 2—619). These motions to dismiss were denied by the court on November 18, 1981, with the defendants given 14 days within which to answer. No answer or other responsive pleadings were filed by the defendants, as ordered.

Almost two months later, still no answer or responsive pleading having been filed, First Federal sent notices to the attorneys of record for the defendants, advising them that First Federal would appear in the circuit court, on February 17 and 24, respectively in 81 CH 6 and 81 CH 7, and there move for entry of decrees for foreclosure and sale. The notices were sent one week prior to the scheduled hearing dates. First Federal did appear on the dates specified in the notices, and it moved, with supporting affidavits, for foreclosure decrees. The defendants did not appear in either case. The court on February 17 and 24, 1982, respectively, entered decrees of foreclosure on those properties. In its decrees the court specifically found that due notice had been given the defendants, through their attorneys. The court also found that the material allegations of the complaints were true and proven, and it ordered a public sale with required publication notice. The decree of foreclosure also provided, in pertinent part, that the associate judge charged with the sales could adjourn them, from time to time, in his discretion for good cause shown, providing notice of any continuance was given to all parties. The court's decree exempted any continued sale of the properties from further publication requirements.

Initially, the public sales were set for March 17, 1982, and for March 31, 1982, with due notice given defendants' attorneys. The requisite newspaper publication, once each week for three consecutive weeks, with the first publication not less than 20 days from the date of sale, was also given. Thereafter, by March 17 court order, the sales

were continued until April 14 and 15. Orders for continuance were sent to the defendants' attorneys. Subsequent thereto, on April 5, 1982, the attorney for the defendants on this appeal filed his appearance on their behalf in the trial court. On April 14, First Federal again moved for a continuance of the sale dates, and the court ordered the sales to be held on June 14 and 15, 1982. Copies of the orders and a notice of the continuance dates were sent to attorneys of record for the defendants.

The defendants then filed, in both cases, another motion, entitled "Motion to Consolidate Cases, Vacate Foreclosure Judgments, or to Stay Proceedings." The defense attempted therein to convince the court to consolidate the foreclosure actions with another suit they had brought in State court, for damages against First Federal and Chapman. In addition to consolidation, they sought either a vacation of the foreclosure decrees or a stay of further proceedings as to them. This motion, which is before us pursuant to allowance of the defense motion to supplement the record on appeal, was denied by the trial court in its entirety on May 27, 1982.

The defense attempts to halt the sales did not cease, for on June 9, 1982, a "Motion to Vacate Order Continuing Foreclosure Sale and Decree of Foreclosure" was filed in both foreclosure actions. The motion alleged that the original decrees of foreclosure were improperly entered, because the defendants' original answers were never stricken and the court nevertheless entered a decree, based upon affidavit, contrary to the requirement of an evidentiary hearing when facts are controverted. The motion also challenged the notice given to the defendants of the continued sale, as insufficient. It also sought leave to file an amended answer. This motion was not called for hearing prior to the dates set for sale.

The foreclosure sales proceeded as scheduled on June 14 and 15, 1982. A report of sale was duly filed in each case, and the reports were approved and confirmed by the court. The defense followed with an additional motion to vacate, seeking vacation of the original foreclosure decrees and the orders approving the sales. These motions incorporated the previous motions to vacate, which had not been heard, and alleged the sales had been accomplished without the required statutory notice. These motions were denied. From the denial of these motions to vacate, the defendants appeal herein.

■ The defense, in seeking to reverse the foreclosure decrees entered in February 1982, argues that they were improperly entered since the defendants were entitled to a hearing on their answers and affirmative defenses. Reference is made to the defendants' initial an-

swers and affirmative defenses, filed in January and February, 1981. As noted in the recitation of facts, these answers were unverified, without supporting affidavit, and neither admitted nor denied the allegations of First Federal's complaint. Such nondenials are not sufficient to controvert the factual allegations of plaintiff's foreclosure complaints. (*American National Bank & Trust Co. v. Schultz* (1977), 54 Ill. App. 3d 488, 490, 369 N.E.2d 903.) As to the affirmative defense raised by each defendant, it amounted to nothing more than a statement that they had an interest in the properties, by virtue of the warranty deeds, and a request that such interest be protected. That they were contract purchasers is not a defense to the foreclosure action. These allegations of affirmative and equitable defense were insufficient to controvert any fact of consequence to the foreclosure action. As styled, the defenses were insufficient and irrelevant. Furthermore, it is apparent from the records that those initial answers were abandoned by the defendants. In 81 CH 7 First Federal filed an amended complaint subsequent to the filing of the defendants' answers to the original complaint. The defendants' response therein was to move for additional time within which to plead to the amended complaint. This motion was granted on August 14, 1981. The defendants, in both actions, were then given an additional 28 days within which to file an answer or other responsive pleadings. This order was entered on August 28, 1981, in both cases. The defense response, in both cases, was entitled "Response to Complaint." When this "Response" was stricken on plaintiff's motion, the defendants were given additional time to file answers. On October 21, 1981, the defendants filed motions to strike and dismiss the complaints of First Federal. The motions were again denied and the defendants ordered to answer within 14 days of November 18, 1981. No answer or other responsive pleading was made by them. It is clear from the procedural history, which we have set forth laboriously in the recitation of facts, that the brief and insufficient initial answers of the defendants were abandoned by them when proceeding with the various responsive motions. At no time in response to the court's orders to answer did the defendants assert any reliance on their original answers. They proceeded with other responsive pleadings and without reliance on the original responses, thereby abandoning their initial insufficient pleadings.

The record also indicates that the defendants were all given notice of First Federal's intent to proceed with hearing on the foreclosure complaints, yet none appeared to contest the same. The court proceeded on affidavits by First Federal to enter foreclosure decrees. This was proper, for where the factual allegations of a foreclosure

complaint are not controverted by answer, a supportive affidavit setting forth the facts of the complaint is sufficient evidence and no further evidence is required. (Ill. Rev. Stat. 1981, ch. 95, par. 22b, now Ill. Rev. Stat. 1981, ch. 110, par. 15—201.) The record contradicts the defendants' suggestion that it was the court and First Federal who failed to follow the applicable procedure in obtaining the foreclosure decrees. The omissions, both relating to pleading and appearance, were those of the defendants and their attorneys. They were given repeated opportunities to file an answer or sufficient defenses, but they failed to do so. They were given notice of the hearing on the complaints, but they failed to appear to contest the same. They were given their opportunity to be heard and did not take it.

The defense makes additional arguments in seeking to have the decrees set aside. It is argued that there was an agreement between the parties in the bankruptcy case to adjudicate the cases in State court and that First Federal breached that agreement. It is further argued that the defendants' failure to respond by answer was the result of their reliance upon the automatic stay effects of the bankruptcy suit. (See 11 U.S.C. sec. 108 (1976).) As to the latter argument, the defendants' actions in filing numerous responsive pleadings after the filing of the bankruptcy case belies a suggestion that they were relying upon any stay therein. These foreclosure actions were proceeding with participation from both sides despite the Chapman bankruptcy. Moreover, at no time prior to entry of the decrees did the defendants indicate to the trial court or argue that they were relying upon any stay. Finally, the bankruptcy judge found, as is conceded by both sides herein, that the circuit court actions were not in violation of any automatic stay provisions of the bankruptcy law. Next, addressing the breach of agreement argument, the record before us does not support the existence of the alleged agreement whereby First Federal agreed to vacate the foreclosure decrees so that the defendants could have a hearing on them. The only reference in the records to any agreement is contained in the defendants' motions of May 24, 1982, which we have by way of supplement to the record on appeal. In those motions, filed in both cases as well as the damage case not before us, it is represented that the agreement in bankruptcy was that the defendants agreed to the court order finding no violation of the stay in exchange for First Federal's agreement not to take any action in the foreclosure cases for seven days, in order to let the defendants file appropriate motions. No mention is made of any agreement to set aside of decrees which had previously been entered so that the defendant could get an opportunity to contest them. If the

terms of the agreement were as set forth in the motion, First Federal complied with its agreement, for the defendants were permitted to file motions seeking to vacate the decrees and consolidate all the cases. The motions were denied, and after that First Federal went ahead with further proceedings, by way of sale. In summary, there is nothing in the record sufficient to uphold the contention of the defense that the decrees should be reversed because of the proceedings involving the Chapman bankruptcy. The foreclosure decrees were properly entered by the circuit court in both the cases. We find no basis to set them aside.

Having determined the validity of the foreclosure decrees, we must next examine the validity of the sales. The defense argues that the sales, made pursuant to the decree and approved by the court, should be reversed because of the failure by First Federal to provide necessary notice. The judgment act (Ill. Rev. Stat. 1981, ch. 77, pars. 14, 15.1, 15.2) provides, in relevant part:

"Sec. 14. No real estate shall be sold by virtue of any judgment, except at public sale, between the hours of 9 in the morning and the setting of the sun of the same day, nor unless the time (specifying the particular hour of day at which the sale shall commence) and the place of holding such sale shall have been previously advertised 3 successive weeks, once in each week, in a newspaper published in the county where the sale shall be made (if there is any newspaper published in such county), and by placing written or printed notices thereof in at least 3 of the most public places in the county where the real estate is situated, specifying the name of the judgment creditor and judgment debtor in the judgment in all of which notices the real estate to be sold shall be described with reasonable certainty, and if there is more than one newspaper published in such county, the judgment creditor or his or her attorney may designate the newspaper in which such notice shall be published."

"Sec. 15.1. In addition to any other notice required by law, and except as hereinafter provided, the plaintiff in a mortgage foreclosure suit shall give notice to all parties to the suit who have appeared therein and have not theretofore been found by the court to be in default for failure to plead, of any sale to be held pursuant to a judgment of foreclosure. Such notice shall specify the place, date and time of sale and shall be given in the manner provided in the applicable rules of court for service of papers other than process and complaint, not more than 4

weeks nor less than 2 weeks prior to the day of sale."

"Sec. 15.2. After notice is given as required in Section 15.1, a copy thereof shall be filed in office of the clerk of the court rendering the judgment, together with a certificate of counsel or other proof that notice has been served in compliance with that section. If any sale is held without compliance with this Section and Section 15.1, such sale may be set aside upon motion supported by affidavit to the court rendering the judgment, by any person entitled to notice who was not so notified, within 30 days after such sale. Any subsequent sale shall be subject to the same requirements as the original sale."

The defendants complain (1) that publication was improper as it specified the March dates, while the sales were held in June, without publication of the June dates; (2) that the required posting of notices at three places in the county was not done; and (3) that they did not receive the required notice of sale for June "not more than 4 weeks nor less than 2 weeks prior to the day of sale." The record indicates that while the sale was initially scheduled for the March dates, the court specifically provided that the dates could be continued, without additional publication notice, provided the defendants were given notice. The sale dates were continued several times, without further publication but with copies of the continuance orders to the defendants. However, the notice of the June dates was given in April, substantially in excess of the "not more than 4 weeks" requirement section 15.1. No further notice of the June sales was given the defendants. First Federal concedes, as well, that no notices were posted as per section 14, but it argues that such notice was not required. The court denied the defendants' motion to vacate the sales based upon the deficiencies in required notice, finding that the defendants had actual notice at every stage of the proceedings.

■ On the basis of our analysis, however, we find the sales must be vacated as a result of the failure to follow required and applicable statutory notice procedures. Section 15.1 of the judgment act, previously set forth, now codified as section 12—117 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 12—117), requires that all parties in a foreclosure suit shall be given notice of any sale by the plaintiff "not more than four weeks nor less than 2 weeks prior to the day of sale." First Federal's notice of the continued sale dates in June was given in April, more than the maximum 4 weeks before the date of sale. This was a clear violation of section 15.1, entitling the defendants to have the sales set aside under section 15.2. If, as First Federal contends, any actual notice is good enough, then plaintiffs in such

actions possess a license to ignore clear and explicit statutory requirements. Especially in this area of foreclosures, strict compliance with the applicable law is the requirement. (*Mutual Life Insurance Co. v. Chambers* (1980), 88 Ill. App. 3d 952, 957, 410 N.E.2d 962.) Furthermore, we find that section 14 of the judgment act, now section 12—117 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 12—117), has application to foreclosure sales of real estate. Prior to 1979 amendments to the judgment act, the provision read: "No real estate shall be sold by virtue of any execution, except at public vendue ***." (Ill. Rev. Stat. 1977 ch. 77, par. 14.) This provision had been construed so as to except foreclosure sales, by masters in chancery, from the requirement of statutory notice, inserting instead a requirement of reasonable notice. (*Springer v. Law* (1900), 185 Ill. 542, 544-45; *Chicago Title & Trust Co. v. Tay* (1940), 307 Ill. App. 76, 79-82.) In *Tay* the court distinguished *Thornton v. Boyden* (1863), 31 Ill. 200, which had held that adjourned sales, pursuant to a trust deed requiring specified notice, required additional notice of the same nature as originally given. It did so on the basis of *Springer v. Law's* exception for sales by masters as opposed to execution sales. However, in 1979, the legislature amended section 14, inserting the word "judgment" for "execution," so that by its plain meaning the section applied to any sale of real estate by virtue of any judgment. It is established that an amendment to an unambiguous statute indicates a purpose to change the law. (*People v. Indiana Harbor Belt R.R. Co.* (1981), 102 Ill. App. 3d 811, 430 N.E.2d 104.) We find that the change made in the 1979 amendment evidences a legislative intent that section 14 was to apply to all sales of real estate by virtue of a judgment, not merely on execution, and included were sales of real estate pursuant to a judgment of foreclosure. This is the clear and plain meaning of the language used in the amendment. Since *Springer* and *Tay's* construction involved the previous statutory language, which has been amended, those decisions are no longer the law as to the amended provision. Furthermore, the statutory language, requiring publication notice, makes no distinction between original sale dates and continued sale dates. Under the plain terms of the statute, notice, both newspaper publication notice as well as posted notice in the county, is required of any continued or adjourned sale, the same as for the original sale. We believe that a uniform procedure for all real estate sales, including mortgage sales, is an improvement over the previous state of the law, wherein some sales were governed by the statutory provisions but others by a reasonableness requirement. In the instant case, the notice required under section 14 was not given, for

no notice was posted in the county as to the sales, nor was notice of the June sale dates published in a newspaper as required. Since the requirements of sections 14 and 15.1 were not complied with in this case, the sales must be set aside and the cases remanded to the circuit court for the setting of future sale dates, with proper and full notice given, as required by the statute.

The courts' denial of the motion to vacate the decrees of foreclosure is affirmed in both cases, but the denial of the motion to vacate and set aside the sales is reversed in both cases, and the cases are remanded to the circuit court for further proceedings in accordance with the views expressed herein.

Affirmed in part and reversed in part, with remandment.

HEIPLE and BARRY, JJ., concur.