THE CITY OF CHICAGO, Plaintiff, v. CENTRAL NATIONAL BANK, Trustee, *et al.*, Defendants and Third-Party Plaintiffs-Appellants, (Robert P. Heffernan, Third-Party Defendant-Appellee).

First District (1st Division)  No. 84—943

Opinion filed June 3, 1985.

Sidney Z. Karasik, of Chicago, for appellants.

No brief filed for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

The present appeal arises out of a foreclosure suit brought by the city of Chicago on property owned by the third-party plaintiffs

and a subsequent purchase at a judicial sale to the third-party defendant, Robert P. Heffernan. This case has come before us on a prior occasion and was disposed of in an unpublished decision pursuant to Supreme Court Rule 23 (87 Ill. 2d R. 23). The facts as set forth in our prior decision are as follows.

On April 26, 1978, the city of Chicago filed a complaint to foreclose a demolition lien on property held in trust. Although an appearance was filed on behalf of the trustee, Central National Bank, and the beneficiaries of the trust (bank), no answer was ever filed. As a result of the bank's failure to plead, a default judgment of foreclosure was entered in favor of the city on March 7, 1979, and the sale of the property was ordered to satisfy the outstanding lien. On May 30, 1979, Robert Heffernan purchased the property at a sheriff's sale for $10,701.93. An order confirming the sale was entered on July 20, 1979, by the same judge that had entered the initial judgment of foreclosure. The order explicitly stated that the sheriff had conducted the sale in accordance with the law and the terms of the judgment of foreclosure and that the proceedings in connection with the sale were in all respects regular and proper.

On April 30, 1980, the bank filed a section 72 petition to vacate the judgment of foreclosure and void the subsequent sale. (Ill. Rev. Stat. 1979, ch. 110, par. 72.) In its petition, the bank alleged that there had been a prior oral agreement with the corporation counsel to "sit on the case" until the summer of 1979 in order to allow the bank sufficient time to obtain a buyer for the property in question. The bank further alleged that the action of the corporation counsel in moving for a default judgment on March 7, 1979, constituted a breach of that agreement and also alleged that no notice of motion was ever given by the city. Robert Heffernan, who was then the owner of the disputed property, was joined as a third-party defendant. On July 15, 1980, Heffernan moved to strike and dismiss the petition for failure to set forth the elements required in a section 72 petition. He specifically raised the bank's failure to allege any meritorious defense to the foreclosure, the lack of due diligence, and the failure to set forth the allegations necessary to prevail against a bona fide purchaser for value.

On October 20, 1980, the motion to strike and dismiss was argued before Judge Siegan by the attorneys for the bank and Heffernan. After both parties had presented their arguments, Judge Siegan stated that he was going to delve into something that was not raised by either party—the propriety of the sale conducted by the sheriff. Calling attention to certain discrepancies that existed in

the record, the court noted that although the date of sale was advertised to be April 18, 1979, the actual sale was held on May 30, 1979. The court further noted that there was no indication that proper notice of the later sale date was given either through oral pronouncement or publication. Judge Siegan ruled that under the terms of the judgment of foreclosure, the sheriff had no authority to delay and reschedule the sale without republication of notice and the sale was therefore void. Counsel for Heffernan pointed out that the judge originally entering the judgment of foreclosure also entered an order confirming that the sale was in all respects proper. The repeated requests by Heffernan's counsel for additional time to brief the point raised *sua sponte* by the court were denied. The court entered an order granting the bank's section 72 petition, vacating the order confirming the sheriff's sale and declaring the sale null and void.

On appeal, Heffernan contended that the entry of a final dispositive order on grounds not raised by the pleadings and following a hearing held for the limited purpose of testing the legal sufficiency of his opponent's section 72 petition amounted to a denial of procedural due process. We agreed and reversed and remanded for further proceedings.

After being remanded to the trial court, Robert Heffernan died and his heirs-at-law, Gerald and Joseph Heffernan, were substituted in the action. The bank was given leave to amend its pleadings in order to raise the issue of the voidness of the judicial sale. On January 23, 1984, after hearing arguments of counsel and reviewing the record and materials submitted, the trial court dismissed the bank's section 72, now section 2—1401, petition. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401.) The trial court found that the order confirming the judicial sale cured any irregularities and that the bank had otherwise failed to meet the necessary statutory requirements for the relief requested.

On appeal from this order of the trial court, the bank raises essentially two issues for review. First, the bank attacks the validity of the default judgment of foreclosure and contends that the oral agreement between it and the city to "sit on the case" until the summer of 1979 was breached by the action of the city in moving for a default on March 7, 1979. The bank contends that this breach and the failure to give proper notice of motion are sufficient grounds for vacating the default judgment of foreclosure pursuant to section 2—1401. The bank next attacks the judicial sale as void because there was a 42-day delay between the advertised sale date and

the actual sale date without republication of public notice. The bank contends that the sale was not conducted in accord with the applicable statutory procedures (Ill. Rev. Stat. 1979, ch. 77, par. 14) and was therefore void and subject to collateral attack at any time even if the original judgment of foreclosure is upheld. The third-party defendants have failed to file a brief with this court. However, pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493, we may reach the merits of the appeal. We affirm the judgment of the trial court dismissing the bank's section 2—1401 petition.

■ Under section 2—1301(e) of the Code of Civil Procedure, a party may move to vacate a default judgment within 30 days of its entry. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1301(e).) A liberal policy exists with respect to vacating defaults under this section. (*Mirmelli v. Great Western Truck Lines, Inc.* (1977), 53 Ill. App. 3d 39, 368 N.E.2d 539.) It is not necessary that such relief be sought on the precise grounds that there is a meritorious defense and a reasonable excuse for not having timely asserted such defense. The overriding consideration under section 2—1301(e) is whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits. (*People ex rel. Reid v. Adkins* (1971), 48 Ill. 2d 402, 406, 270 N.E.2d 841.) However, once the 30-day time period has lapsed, as in the present case, relief from a default judgment may only be obtained under the more stringent requirements imposed by section 2—1401. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401; *Goldstick v. Saporito* (1974), 22 Ill. App. 3d 621, 317 N.E.2d 774.) A petition for relief under this section invokes the court's equitable power to vacate a default judgment attended by unfair, unjust or unconscionable circumstances and it is incumbent on the petitioner to show that he has a meritorious defense and that he was diligent in protecting his rights. *In re Application of Du Page County Treasurer* (1980), 84 Ill. App. 3d 506, 405 N.E.2d 869.

With respect to the bank's first argument, we do not believe the amended petition satisfies the more rigorous requirements imposed by section 2—1401 for vacating a default judgment. In this regard, we note that the bank has never asserted any meritorious defense to the underlying foreclosure action brought by the city. It never filed pleadings in the original foreclosure action denying any of the city's allegations, which ultimately resulted in the entry of a default judgment against the bank. In its section 2—1401 petition, the bank does not dispute the amount claimed by the city for demolition costs, nor does it deny liability for such costs. Rather, the bank

relies on a purported oral agreement between the city attorney and the bank to "sit on the case" until the summer of 1979 in order to allow the bank to find a buyer for the property. The bank contends that it was prejudiced by the city's action in moving for a default in the spring of 1979. However, the verified petition filed by the bank belies this contention. The petition contains no allegation that a buyer for the property was, in fact, procured in the summer of 1979. Rather, the bank alleges that some time "in December 1979, or January 1980, the possibility of selling the property arose." Thus, even if the city had "sat on the case" until the summer of 1979, the bank would not have been able to produce a buyer for the property, and a judgment of foreclosure would have been entered in the city's favor. In view of the foregoing, we find that the bank's petition fails to set forth the requisite due diligence and meritorious defense for relief pursuant to section 2—1401 and also find that the bank was not prejudiced by the city's failure to "sit on the case" until the summer of 1979. Accordingly, we hold the trial court properly refused to vacate the default judgment of foreclosure.

■ Next, the bank contends that even if the default judgment of foreclosure cannot be attacked pursuant to section 2—1401, the judicial sale of the property was void for failure to comply with the publication requirements imposed by section 14 of the judgment act (Ill. Rev. Stat. 1981, ch. 77, par. 14), now section 12—115 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 12—115). The bank's argument is premised on the well-established rule that a void judgment or decree is subject to collateral attack at any time and that a court has inherent authority to expunge from its records void acts. (*Reynolds v. Burns* (1960), 20 Ill. 2d 179, 192, 170 N.E.2d 122; *In re Petition of Stern* (1954), 2 Ill. App. 2d 311, 120 N.E.2d 62.) Accordingly, the bank contends that the trial court erred in failing to vacate the void sale of property to Heffernan. We disagree.

In general, Illinois recognizes two classifications of void judgments subject to collateral attack. There are judgments which are void because the trial court lacked jurisdiction over the person or subject matter and there are judgments which are void because they are procured through fraud. (*Johnston v. City of Bloomington* (1979), 77 Ill. 2d 108, 395 N.E.2d 549; *Department of Revenue v. Joch* (1951), 410 Ill. 308, 102 N.E.2d 155.) Similarly, in the area of judicial sales, collateral attacks are limited to sales which are void with but two grounds for invalidation—want of jurisdiction in the court ordering the sale and fraud practiced in effecting the sale. (See generally 50 C.J.S. *Judicial Sales* sec. 64(b) (1947), and cases cited

therein.) Here, the bank's petition contains no allegations of fraud in connection with the sale. Rather, the bank contends that the statutory requirements for judicial sales imposed by section 12—115 are jurisdictional in nature and failure to follow those requirements renders the sale void.

Section 12—115 contains the "[n]otice of sale of real estate" requirements and provides:

"No real estate shall be sold by virtue of any judgment, except at public sale, between the hours of 9 in the morning and the setting of the sun of the same day, nor unless the time (specifying the particular hour of day at which the sale shall commence) and the place of holding such sale shall have been previously advertised 3 successive weeks, once in each week, in a newspaper published in the county where the sale is made (if there is any newspaper published in such county), and by placing written or printed notices thereof in at least 3 of the most public places in the county where the real estate is situated, specifying the name of the judgment creditor and judgment debtor in the judgment in all of which notices the real estate to be sold shall be described with reasonable certainty, and if there is more than one newspaper published in such county, the judgment creditor or his or her attorney may designate the newspaper in which such notice shall be published."

The bank contends that the sale in question was advertised to be April 18, 1979, but the actual sale was postponed to May 30, 1979, without republishing the advertisement. While the bank argues at great length that any such irregularity or departure from the requirements imposed by section 12—115 renders the sale void, the bank fails to cite section 12—116 of the Code of Civil Procedure, which directly addresses the effect such irregularities have on the validity of the sale. (Ill. Rev. Stat. 1983, ch. 110, par. 12—116, formerly Ill. Rev. Stat. 1981, ch. 77, par. 15.) That section provides:

"If any sheriff or other officer sells any other real estate by virtue of any judgement, otherwise than in the manner provided by law or without such previous notice, the officer so offending shall, for every such offence, forfeit and pay the sum of $50, to be recovered with costs of the action by the person whose property is sold.

However, no such offense, nor any irregularity on the part of the sheriff, or other officer having the certified copy of the judgment for enforcement, shall affect the validity of any sale

made under it *unless the purchaser had notice thereof."* (Emphasis added.)

Provisions similar to section 12—116 have been part of the statutory law of this State since 1857. (See *Osgood v. Blackmore* (1871), 59 Ill. 261, 269.) Interpretations of these prior statutes have held that irregularities with respect to statutory notice and advertising requirements render the sale voidable in the sense that the sale may be set aside upon motion made before the statutory period of redemption has expired. (See *Allis-Chalmers Manufacturing Co. v. Hays* (1930), 339 Ill. 230, 237, 171 N.E. 178, and *Osgood v. Blackmore* (1871), 59 Ill. 261, 267.) However, a defective or insufficient notice does not render the sale void, or even voidable, unless the purchaser has notice of the irregularity. *McGowan v. Goldberg* (1917), 281 Ill.547, 550, 117 N.E. 1045.

The bank does not allege that the purchaser here had actual notice of the irregularity complained of but rather contends on appeal that the purchaser was chargeable with such notice, citing *Brown v. McKean* (1928), 250 Ill. App. 244, for support. However, neither *Brown* nor any other case cited by the bank has held that a purchaser, who is a stranger to the record, is chargeable with knowledge of irregularities in the advertisement of a judicial sale. In *Brown*, the court held that where a decree entered in a partition action stated that the property was occupied by a tenant upon the terms and conditions of a lease, the subsequent purchaser at a judicial sale was charged with notice of the terms of the lease. (250 Ill. App. 244, 246-47.) The court stated:

"A party purchasing at a judicial sale is charged with notice of such material facts as the record of the proceedings under which he derives title discloses, and he will be presumed to have examined the same *before* becoming a purchaser." (Emphasis added.) 250 Ill. App. 244, 246-47.

In *Brown*, it was clear that the existence of the lease was a matter of record *before* the judicial sale occurred. Here, the record reveals that the discrepancies in published sale dates of which the bank complains did not become part of the court record until nearly two months after Heffernan purchased the property at the sheriff's sale. Accordingly, *Brown* is not controlling, since an examination of the record prior to the sale would not have revealed the irregularities complained of by the bank.

The other case cited in support of the bank's constructive notice theory, *City of Chicago v. Cosmopolitan National Bank* (1983), 120 Ill. App. 3d 364, 458 N.E.2d 11, is also readily distinguishable.

There, the underlying judgment of foreclosure was void because the city had failed to file suit within a mandatory time limit imposed by statute. In a subsequent collateral attack on the judicial sale held pursuant to the judgment of foreclosure, the court applied the well-settled rule of law which states that where the judgment is void, a judicial sale held pursuant to that judgment is also void. (*Armstrong v. Obucino* (1921), 300 Ill. 140, 143, 133 N.E. 58.) The court also noted that the defect in the underlying judgment was a matter of record prior to the sale and that the purchaser had constructive notice of the outstanding rights of other parties. *City of Chicago v. Cosmopolitan National Bank* (1983), 120 Ill. App. 3d 364, 367.

In the present case, the trial court clearly had jurisdiction over the subject matter and the parties. Accordingly, the underlying judgment of foreclosure is not void and the subsequent judicial sale is not subject to collateral attack on this basis. Also, the irregularities complained of by the bank were not matters of record, as they were in *Brown* and *Cosmopolitan National Bank*, at the time of the judicial sale. We must therefore reject the bank's constructive notice argument.

The bank also relies heavily on the case of *First Federal Savings & Loan Association v. Chapman* (1983), 116 Ill. App. 3d 950, 452 N.E.2d 600, for the proposition that failure to follow the statutory notice procedures for judicial sales renders them void. While it is true that the court in *First Federal* vacated a judicial sale because of defects in the statutory notice required under section 12—115, it did so on a direct, not a collateral, attack. In *First Federal*, the property owner moved to vacate the order permitting the sale of his property *prior* to the sale on the ground that the notice of sale was insufficient. (116 Ill. App. 3d 950, 953.) Thus, prospective purchasers were put on constructive notice of the irregularities complained of. The motion was not heard until after the sale was completed and was then denied by the trial court. The appellate court reversed and remanded for the setting of future sale dates "with proper and full notice given, as required by statute." 116 Ill. App. 3d 950, 959.

The court in *First Federal* followed prior precedent in setting aside· a judicial sale for irregularities where the party so moved before the statutory period of redemption had expired. (See *Allis-Chalmers Manufacturing Co. v. Hays* (1930), 339 Ill. 230, 237, 171 N.E. 178.) Thus, *First Federal* dealt with a direct attack on a voidable sale, not a collateral attack as we have in the case at bar. It is also apparent that, unlike the facts in the present case, in *First*

*Federal* the purchaser was chargeable with notice of the irregularities because the property owner had moved to vacate the order permitting the sale prior to the sale. (*Cf. McGowan v. Goldberg* (1917), 281 Ill. 547, 550, 117 N.E. 1045 (where the sale was not held on the day advertised, but was postponed to a later date without proper notice, the court held that a judicial sale on defective or insufficient notice "is not void or even voidable, unless the purchaser has notice of the irregularity").) Accordingly, *First Federal* provides no support for the proposition that failure to follow statutory notice requirements renders the sale void. Rather, the decision in *First Federal* is entirely consistent with prior precedent holding irregularities in judicial sales render them voidable, provided the purchaser has notice of the irregularities and the party moves to vacate the sale prior to the statutory redemption period.

After reviewing the relevant case law, we must reject the bank's contention that this sale was void. Prior case law has established that such irregularities as the ones complained of here result only in a voidable sale, not a void one. Inherent in those decisions and in section 12—116 itself are policies favoring the permanency and stability of judicial sales which would be seriously undermined by the result urged by the bank. Accordingly, the bank's argument must fail on two grounds—first, the sale, though voidable, was not directly attacked during the statutory redemption period and, second, the bank has failed to allege facts which would indicate that the purchaser of the property had notice of the irregularities complained of.

In view of the foregoing, we hold that the trial court properly dismissed the bank's petition attacking the default judgment of foreclosure and the judicial sale. The judgment of the trial court is therefore affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.